**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X    Docket No:
FELLICIA BROWN,

                    *Plaintiff,*

          - against-                                    **COMPLAINT**

METROPOLITAN DENTAL ASSOCIATES, D.D.S.
P.C, BROADWAY KIDS & SMILES PEDIATRIC          ***PLAINTIFF DEMANDS***
DENTISTRY OF NY, DR. PAUL COHEN, D.D.S.,          ***A TRIAL BY JURY***
*In His Individual and Official Capacities,* DR.
KATHY NACO, *In Her Individual And Official*
*Capacities*, and MARIO ORANTES*, In His*
*Individual and Official Capacities.*

                    *Defendants.*
-------------------------------------------------------------X

      PLAINTIFF FELLICIA BROWN, by her attorneys, PHILLIPS & ASSOCIATES,

Attorneys at Law, PLLC, hereby complains of DEFENDANTS, and alleges as follows:

### NATURE OF THE CASE

1.      PLAINTIFF complains pursuant to the Title VII of the Civil Rights Act of 1964, as codified,

      42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of

      1991, Pub. L. No. 102-166) ("Title VII"), 42 U.S.C § 1981 (*as amended*); the New York

      State Human Rights Law, New York State Executive Law § 296, *et seq.* ("NYSHRL"), and

      the New York City Human Rights Law, New York City Administrative Code § 8-107, *et*

      *seq.* ("NYCHRL"), and seeks damages to redress the injuries PLAINTIFF has suffered as

      a result of being **discriminated against** and **retaliated against** by her employer solely due

      to her **sex/gender, pregnancy, race/color**, and in retaliation for engaging in protected

      activity.

2.      At all times relevant, PLAINTIFF was employed by DEFENDANTS, METROPOLITAN

      DENTAL ASSOCIATES, D.D.S. P.C. and BROADWAY KIDS & SMILES PEDIATRIC

DENTISTRY OF NY, as a Dental Assistant in DEFENDANTS' office in Manhattan, New York.

3.    During her tenure at DEFENDANTS, METROPOLITAN DENTAL ASSOCIATES, D.D.S. P.C. and BROADWAY KIDS & SMILES PEDIATRIC DENTISTRY OF NY, PLAINTIFF learned that she was pregnant.

4.    Upon learning of her pregnancy, PLAINTIFF immediately disclosed same to DEFENDANTS because PLAINTIFF was, in part, concerned about being exposed to direct radiation and gases in the office when she operated x-ray and nitrous equipment.

5.    Immediately upon PLAINTIFF'S disclosure of her pregnancy, DEFENDANTS refused to grant PLAINTIFF any accommodations; did not engage in any good-faith interactive process; ordered PLAINTIFF to continue exposing herself to radiation; ordered PLAINTIFF to get a doctor's note that cleared her to work with radiation and nitrous; subjected PLAINTIFF to adverse employment actions and/or subjected PLAINTIFF to a hostile work environment in retaliation for her pregnancy and requests for accommodations.

6.    In addition, DEFENDANTS (Specifically DEFENDANT DR. KATHY NACO) made unreasonable statements and asked outrageous questions to PLAINTIFF such as whether she planned to keep her baby because same would prevent her from her job duties.

7.    PLAINTIFF complained to DEFENDANT OFFICE MANAGER MARIO ORANTES and to DEFENDANT DR. PAUL COHEN, D.D.S. about feeling that she was being discriminated against due to her pregnancy.

8.    In response, DEFENDANTS held a meeting with PLAINTIFF, wherein she was surrounded, insulted, ridiculed, and verbally abused by DEFENDANTS, particularly by DEFENDANT DR. PAUL COHEN, D.D.S., who not only yelled and cursed at PLAINTIFF but also suddenly accused PLAINTIFF of poor performance.

9.      DEFENDANT DR. PAUL COHEN, D.D.S. then referred to PLAINTIFF as a "***pain in the ass***" during this meeting.

10.     During this meeting, DEFENDANT DR. PAUL COHEN, D.D.S. refused to grant PLAINTIFF any accommodation and instead ordered PLAINTIFF to get a doctor's note that cleared her to work around x-rays and nitrous in order to remain employed. DEFENDANTS were not concerned for PLAINTIFF'S pregnancy or health concerns, whatsoever.

11.     Then, to make matters worse, as PLAINTIFF was being surrounded and humiliated for her pregnancy complaint, DEFENDANT DR. PAUL COHEN, D.D.S., with the support of DEFENDANT MARIO ORANTES and another employee that stood by, began to attack PLAINTIFF and her discrimination complaints.

12.     Specifically, though PLAINTIFF did not mention race/color, DEFENDANTS engaged PLAINTIFF in a prolonged discussion about race and racial discrimination. The only reason that DEFENDANTS chose to attack PLAINTIFF with racial issues, in response to her pregnancy discrimination concerns, is because PLAINTIFF is Black and/or African American.

13.     Then DEFENDANTS wrongfully and viciously terminated PLAINTIFF right there, on the spot.

14.     **To add further insult to PLAINTIFF'S injuries, DEFENDANTS willingly wrongfully terminated PLAINTIFF at a time that they were aware that PLAINTIFF was pregnant and required her income, employment, and benefits to prepare for her coming childbirth, medical expenses, childcare, and self-care. Further, DEFENDANTS wrongfully terminated PLAINTIFF when they were well-aware that PLAINTIFF would need to search for employment while pregnant, which would**

**make obtaining employment extremely difficult.**

15.    As a result of the above-alleged acts of DEFENDANTS, which will be outlined in detail below, PLAINTIFF asserts that she was discriminated against and retaliated against based on her gender, pregnancy, race, and color.

## **JURISDICTION, VENUE, AND PROCEDURAL PREREQUISITES**

16.    Jurisdiction of this Court is proper under 42 U.S.C. §2000e-5(f)(3) and 28 U.S.C. §§1331 and 1343.

17.    The Court has supplemental jurisdiction over the claims that PLAINTIFF has brought under State and City law pursuant to 28 U.S.C. § 1367.

18.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as one or more DEFENDANTS reside within the Southern District of New York or the acts complained of occurred therein.

19.    By: (a) timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 22, 2019; (b) receiving a Notice of Right to Sue from the EEOC on January 22, 2021; (c) commencing this action within 90 days of the issuance of the Notice of Right to Sue by the EEOC; and (d) contemporaneously with the filing of this Complaint, mailing copies thereof to the New York City Commission of Human Rights ("NYCCHR") and the Office of the Corporation Counsel of the City of New York pursuant to the notice requirements of § 8-502 of the New York City Administrative Code, PLAINTIFF has satisfied all of the procedural prerequisites for the commencement of the instant action.

20.    A copy of the Notice of Right to Sue is annexed hereto as Exhibit A.

21.    A copy of the transmittal letter to the NYCCHR, *et ano.*, is annexed hereto as Exhibit B.

## PARTIES

22. **PLAINTIFF FELLICIA BROWN (hereinafter "PLAINTIFF BROWN")** is a 33-year-old female, who at all times relevant to the Complaint was employed by DEFENDANTS as a Dental Assistant. Plaintiff was employed by DEFENDANTS from May 21, 2019 until she was wrongfully terminated on October 3, 2019.

23. **DEFENDANT METROPOLITAN DENTAL ASSOCIATES, D.D.S. P.C**, **(hereinafter "DEFENDANT MDA")** is a medical practice, which specializes in dentistry, is a domestic professional corporation formed under the laws of the State of New York, County of Westchester.

24. The DEFENDANT MDA'S office at issue in this Action is located at 225 Broadway, New York, New York 10007.

25. **DEFENDANT BROADWAY KID & SMILES PEDIATRIC DENTISTRY OF NY (hereinafter "DEFENDANT BK&S")** is a dental practice related to DEFENDANT MDS that specializes in pediatric dentistry.

26. The BK&S office at issue in this Action is located in the same facility and DEFENDANT MDA at 225 Broadway, New York, New York 10007.

27. Upon information and belief, **DEFENDANT BK&S** is owned, operated, in part or whole, by **DEFENDANT MDA** and is located in the same physical facility/location.

28. **DEFENDANTS, MDA** and **BK&S**, share employees, equipment, management, patients and resources.

29. Upon information and belief, **DEFENDANTS, MDA** and **BK&S**, were joint employers over PLAINTIFF in that these DEFENDANTS share common management, employees, human resource functions, facilities and equipment.

30. **PLAINTIFF** worked for, was managed and supervised by both **DEFENDANTS, MDA**

and **BK&S**, and/or by members of both entities.

31.    **DR. PAUL COHEN, D.D.S, (hereinafter "DEFENDANT COHEN")** is a Dentist, who is also the Principal and owner of DEFENDANT MDA. DEFENDANT COHEN had supervisory authority over PLAINTIFF and had the ability to affect the terms and conditions of PLAINTIFF'S employment. DEFENDANT COHEN is being sued herein in his individual and official capacities.

32.    **DR. KATHY NACO (hereinafter "DEFENDANT NACO")**, is a Dentist (upon information and belief) employed by DEFENDANT BK&S. Upon information and belief, DEFENDANT NACO is a licensed doctor/dentist. DEFENDANT NACO had supervisory authority over PLAINTIFF and had the ability to affect the terms and conditions of PLAINTIFF'S employment. DEFENDANT NACO is being sued herein in her individual and official capacities.

33.    **DEFENDANT MARIO ORANTES (hereinafter "DEFENDANT ORANTES")**, is an employee at DEFENDANT, MDA and/or BK&S, and served in the capacity of office manager for both entities. DEFENDANT ORANTES had supervisory authority over PLAINTIFF and had the ability to affect the terms and conditions of PLAINTIFF'S employment. DEFENDANT ORANTES is being sued herein in his individual and official capacities.

34.    **DEFENDANTS, COHEN, NACO, and ORANTES**, are hereinafter collectively referred to as "**INDIVIDUAL DEFENDANTS**."

35.    **DEFENDANTS, MDA, BK&S, COHEN, NACO, and ORANTES**, are hereinafter collectively referred to as "**MDA DEFENDANTS**."

## **MATERIAL FACTS**

36.    PLAINTIFF began working at/for DEFENDANTS, MDA and BK&S, on or about May 21,

2019 as a Dental Assistant.

37.  Prior to her employment with DEFENDANT MDA / BK&S, PLAINTIFF was a Dental Assistant for ten years and had an excellent history of performance.

38.  At all times relevant, PLAINTIFF excelled in her position with MDA DEFENDANTS, received no reprimands or criticisms regarding her performance (until the circumstances alleged below), performed her duties competently and satisfactorily, and was otherwise qualified for her employment.

39.  On or about July 5, 2019, PLAINTIFF informed DEFENDANTS, ORANTES and NACO, that she was pregnant.

40.  At that time, among other things, PLAINTIFF expressed concern about being exposed to radiation from various machines used at DEFENDANTS, MDA and BK&S, including the X-Ray and Nitrous machines, due to her pregnancy.

41.  Indeed, PLAINTIFF'S concerns were supported by recommendations and findings of the American Dental Association **("ADA")**, which determined, *inter alia,* that "**Nitrous oxide is classified as a pregnancy risk group Category C medication, meaning that there is a risk of fetal harm if administered during pregnancy.  It is recommended that pregnant women, both patients <u>and staff</u>, avoid exposure to nitrous oxide**." https://www.ada.org/en/member-center/oral-health-topics/pregnancy# . . .

42.  As for X-Rays and radiographs, the ADA recommends, *inter alia*, that "**Dental professionals who take radiographs should inform their employer in writing that they are pregnant as soon as they are aware of the pregnancy**" and further recommended precautionary measures that should be taken by the employer to limit a pregnant employee from exposure to radiation (*Id.*)

43.  DEFENDANTS (individually and collectively) are aware of the above findings and

recommendations of the American Dental Association.

44.    As a Dental Assistant at DEFENDANTS MDA and BK&S, PLAINTIFF would constantly perform X-Rays and attend to patients needing nitrous on a daily basis.

45.    PLAINTIFF was also constantly lifting and moving heavy equipment, items and boxes around throughout the facility on a daily basis.

46.    PLAINTIFF expressed concerns with lifting heavy boxes and items, directly and constantly operating the X-Ray and nitrous machines, and sought a reasonable accommodation.

47.    DEFENDANTS, ORANTES and NACO, congratulated PLAINTIFF.

48.    But then, without any consideration, DEFENDANTS, ORANTES and NACO also told PLAINTIFF that she would continue to work on the X-Ray and Nitrous machines and that same would not hurt or affect PLAINTIFF'S baby.

49.    Neither DEFENDANTS ORANTES or NACO attempted to engage in any interactive process with PLAINTIFF before making their decision.

50.    MDA DEFENDANTS did not refer PLAINTIFF to human resources or to any department charged with the responsibility of addressing personnel concerns before denying PLAINTIFF'S request.

51.    MDA DEFENDANTS did not even ask PLAINTIFF to provide medical documentation to support her concerns.

52.    Instead, PLAINTIFF was told to keep working in the normal course and to continue performing the same tasks as she has been performing up to that point, including handling the X-Ray machines and Nitrous machine/room, lifting and carrying heavy items.

53.    At all times, DEFENDANTS, ORANTES and NACO, were aware that nitrous and radiation presented risks for pregnant mothers and had no factual or medical bases to tell PLAINTIFF to ignore her concerns. In fact, they each knew of the American Dental

Association's recommendations about exposing pregnant women to same.

54.    As PLAINTIFF was a new employee and did not want to create a problem for her employment, PLAINTIFF continued to do her job as she was told.

55.    But PLAINTIFF continued to express her health and pregnancy concerns to DEFENDANTS, ORANTES and NACO.

56.    Throughout the months of July to September 2019, DEFENDANT NACO continued to ignore PLAINTIFF'S complaints and began to subtly retaliate against PLAINTIFF.

57.    DEFENDANT NACO became annoyed that PLAINTIFF continued to express concerns about her pregnancy and health.

58.    Outrageously, DEFENDANT NACO had a conversation with PLAINTIFF wherein she asked if PLAINTIFF was "***sure that she wanted to keep her baby.***"

59.    Specifically, PLAINTIFF was asked if she was sure that she was going to keep the baby because she would not be able to do x-rays and/or be in the nitrous room and that would mean that MDA DEFENDANTS would not need PLAINTIFF'S assistance any longer.

60.    Upon information and belief, DEFENDANT NACO was more concerned with the business of DEFENDANTS, MDA and BK&S, than PLAINTIFF'S health and pregnancy.

61.    Bewildered by the question, PLAINTIFF confirmed that she was keeping the baby.

62.    Following this conversation, DEFENDANT NACO advised PLAINTIFF that, all of a sudden, DEFENDANT, NACO and/or ORANTES, would be hiring and bringing in more assistants and that "*whoever worked better*" would be kept on the job.

63.    PLAINTIFF interpreted this as a threat to her employment and as notice that PLAINTIFF would lose her employment if she complained about exposure and health risks, while the other newly-hired Assistants did not.

64.    DEFENDANT NACO meant to cause PLAINTIFF to feel intimidated and meant to cause

PLAINTIFF to stop complaining about her pregnancy/health concerns.

65.  DEFENDANT NACO intended for PLAINTIFF to fear for her employment – in retaliation for PLAINTIFF seeking accommodations.

66.  At no time prior to PLAINTIFF'S disclosure of her pregnancy did DEFENDANT NACO express that she was going to hire other assistants to compete with PLAINTIFF for her job.

67.  At no time prior to PLAINTIFF'S seeking accommodations did DEFENDANT NACO ask DEFENDANT ORANTES to hire (unnecessary) employees and candidates to compete with PLAINTIFF for her position.

68.  MDA DEFENDANTS did not need another dental assistant and this was made clear when DEFENDANT NACO indicated that only the dental assistant "*who worked better*" would be kept employed.

69.  Knowing that she was expecting a baby and needed income and employment to support herself and baby, PLAINTIFF knew that she could not lose her job at DEFENDANT, MDA / BK&S.

70.  PLAINTIFF was also aware that it would be much more difficult to find a job while pregnant and this added to PLAINTIFF'S anxieties.

71.  PLAINTIFF began to experience constant fear, anxiety and stress because of the actions of DEFENDANT NACO.

72.  In addition to subtle and outright threats to PLAINTIFF'S employment, INDIVIDUAL DEFENDANTS began to treat PLAINTIFF harshly in the office as well.

73.  Among other things, INDIVIDUAL DEFENDANTS began yelling at a berating PLAINTIFF in the office in front of patients and coworkers.

74.  MDA DEFENDANTS did not subject PLAINTIFF to this type of abuse before she disclosed her pregnancy and/or before PLAINTIFF sought accommodations.

75. PLAINTIFF then got a doctor's note from her doctor, which indicated that PLAINTIFF should limit exposure to x-rays and nitrous during her pregnancy.

76. PLAINTIFF handed the doctor's note to "Rosa" in personnel and/or human resources.

77. Soon after PLAINTIFF submitted the doctor's note, on or about September 26, 2019, DEFENDANT NACO suddenly told PLAINTIFF that NACO would no longer need PLAINTIFF'S assistance.

78. DEFENDANT NACO told PLAINTIFF to go home.

79. DEFENDANT NACO did not tell PLAINTIFF that PLAINTIFF was terminated, nor did DEFENDANT NACO advise PLAINTIFF about the status of her continued employment.

80. PLAINTIFF complied with DEFENDANT NACO'S orders, left the facility, went home without pay, and waited for a call from MDA DEFENDANTS concerning her employment.

81. PLAINTIFF went home in distress, fear, anger, and anxiety about the status of her employment.

82. Out of fear that she was going to be fired at that point, PLAINTIFF called and complained to DEFENDANT ORANTES the following day, on September 27, 2019.

83. On several following occasions, PLAINTIFF continued to call to complain to DEFENDANT ORANTES about the discriminatory actions of DEFENDANT NACO.

84. PLAINTIFF also specifically complained to DEFENDANT ORANTES about being sent home by DEFENDANT NACO for discriminatory reasons and/or due to her pregnancy.

85. PLAINTIFF was clear that she was worried about her employment and was not being told if she still had a job at DEFENDANT MDA and/or BK&S.

86. Upon information and belief, DEFENDANT ORANTES became annoyed with PLAINTIFF because PLAINTIFF kept calling him for answers and help.

87. On different occasions, DEFENDANT ORANTES told PLAINTIFF that he was not in the

office, could not deal with her complaints at that time and would handle it later at some time.

88.    However, DEFENDANT ORANTES never got back to PLAINTIFF about her complaints and PLAINTIFF remained at home in limbo, without pay, waiting for a call.

89.    As a result, PLAINTIFF continued to call DEFENDANT ORANTES to complain about her situation and her circumstances with DEFENDANT NACO, as well as to complain about being kept out of work.

90.    DEFENDANT ORANTES continued to ignore PLAINTIFF'S complaints and never bothered to inquire further with PLAINTIFF.

91.    After multiple calls to ORANTES by PLAINTIFF, DEFENDANT ORANTES began to openly and outwardly express his annoyance toward PLAINTIFF.

92.    Among other things, DEFENDANT ORANTES told PLAINTIFF to ***never call his phone again!***

93.    DEFENDANT ORANTES did not address PLAINTIFF'S concerns/complaints and intentionally ignored same.

94.    DEFENDANT ORANTES did not tell PLAINTIFF about the status of her employment and allowed her to sit out of work, idle, without pay, knowing that PLAINTIFF was facing financial hardship as a result.

95.    DEFENDANT ORANTES did not forward PLAINTIFF'S complaint/concerns to anyone at DEFENDANT MDA and/or BK&S charged with the responsibility of investigating personnel issues or discrimination complaints.

96.    Upon information and belief, DEFENDANT ORANTES communicated PLAINTIFF'S concerns to DEFENDANT NACO and advised DEFENDANT NACO that PLAINTIFF continued to call to complain.

97.    But the two decided to keep PLAINTIFF in limbo and out of work without further information knowing that PLAINTIFF was stressed about same.

98.    MDA DEFENDANTS wanted and intended to force PLAINTIFF to quit and/or to look for new employment.

99.    Upon information and belief, MDA DEFENDANTS did not have an anti-discrimination and or EEOC policy in place.

100.    If MDA DEFENDANTS did have any such policy, MDA DEFENDANTS willingly ignored same and subjected PLAINTIFF to a hostile work environment and adverse employment action due to her pregnancy.

101.    Defendants, ORANTES and NACO, had no good faith business justification for their statements and treatment of PLAINTIFF.

102.    No similarly-situated non-pregnant employee(s) or male employees at DEFENDANTS MDA / BK&S experienced the same treatment as PLAINTIFF.

103.    After not hearing from DEFENDANTS, NACO or ORANTES, for days concerning whether she could return to work, PLAINTIFF decided to go to MDA DEFENDANTS' office to find out about her employment directly.

104.    On or about October 1, 2019, PLAINTIFF went to the DEFENDANT MDA/BK&S office to speak with the Principal, DEFENDANT COHEN, about her employment and complaints.

105.    During this meeting, PLAINTIFF described her situation and complained, specifically, that she was being discriminated against and treated differently because of her pregnancy.

106.    PLAINTIFF disclosed the fact that she continued to complain to DEFENDANT ORANTES, but DEFENDANT ORANTES refused to address her complaints and took no action.

107.    PLAINTIFF disclosed all her interactions with DEFENDANTS, NACO and ORANTES,

to DEFENDANT COHEN and expressed that she believed that she was being retaliated against for asking for accommodations.

108.    In response, DEFENDANT COHEN told PLAINTIFF, "*we don't discriminate because someone is pregnant*."

109.    Then, DEFENDANT COHEN alleged that he would talk to DEFENDANTS, ORANTES and NACO, and call PLAINTIFF back after 12:00 p.m. that day (10/1/2019).

110.    At first, PLAINTIFF was relieved to hear DEFENDANT COHEN'S position about discrimination in the workplace and his promise to speak to DEFENDANTS, ORANTES and NACO.

111.    PLAINTIFF was contacted by DEFENDANT COHEN thereafter and was told that he would arrange a meeting between PLAINTIFF and DEFENDANT NACO to discuss PLAINTIFF'S complaints and concerns.

112.    But, this meeting never occurred.

113.    Instead, on or about October 3, 2019, PLAINTIFF was called into the office to have a face-to-face meeting with DEFENDANT COHEN. When PLAINTIFF arrived, DEFENDANTS COHEN and ORANTES were both present with another (unknown) female employee. DEFENDANT NACO was not present as promised.

114.    Though PLAINTIFF was hopeful about this meeting and thought that she would be able to engage in an interactive process with DEFENDANTS, PLAINTIFF was instead immediately made to feel uncomfortable, unwelcome, and attacked.

115.    Upon PLAINTIFF'S arrival in the meeting, PLAINTIFF was met by hostility and an annoyed DEFENDANT COHEN.

116.    From the outset, before PLAINTIFF even had a chance to speak, DEFENDANT COHEN began to angrily and annoyingly accuse PLAINTIFF of threatening MDA DEFENDANTS

with legal action.

117.   Specifically, DEFENDANT COHEN falsely accused PLAINTIFF of threatening to call her lawyers and asked PLAINTIFF why PLAINTIFF allegedly threatened legal action.

118.   DEFENDANT NACO falsely claimed that PLAINTIFF threatened to call lawyers to sue DEFENDANTS, MDA and BK&S.

119.   PLAINTIFF was falsely accused of stating that she would "*rather be fired*" so that she "*could find a lawyer.*"

120.   PLAINTIFF was speechless and was bewildered by the accusation(s). PLAINTIFF immediately denied making any such statement to DEFENDANT NACO or anyone else at DEFENDANT MDA / BK&S.

121.   PLAINTIFF explained that DEFENDANT NACO'S accusation was outright false as PLAINTIFF never threatened to call lawyers for, or against, any MDA DEFENDANTS.

122.   Nevertheless, in response to her denials and explanations, DEFENDANT COHEN continued to facetiously repeat the words "*right, right*" as if PLAINTIFF were lying. It was clear the DEFENDANT COHEN did not believe PLAINTIFF and made his disbelief well-known.

123.   Indeed, even if PLAINTIFF did threaten to call lawyers on MDA DEFENDANTS (*which she did not*) due to the hostile work environment and adverse employment actions to which she was subjected, **same would have been protected activity in any event.**

124.   As such, DEFENDANT COHEN was retaliating against PLAINTIFF, and treating PLAINTIFF with hostility, due to his belief that PLAINTIFF engaged in protected activity.

125.   Then, suddenly, DEFENDANT COHEN began telling PLAINTIFF that she "*is not a very good dental assistant*" and began to question PLAINTIFF'S professional history and experience as a Dental Assistant.

126.    PLAINTIFF was forced to explain that she has been a dental assistant for 10 years and was never told that she was not good at her profession.

127.    PLAINTIFF explained that DEFENDANT NACO never had or raised any issue with PLAINTIFF'S performance before PLAINTIFF disclosed her pregnancy and/or before this meeting with DEFENDANT COHEN.

128.    DEFENDANT COHEN began yelling at PLAINTIFF and falsely accusing PLAINTIFF of performance issues, which PLAINTIFF was never advised of at any time prior.

129.    During this discussion, DEFENDANT COHEN stated that PLAINTIFF allegedly "*failed*" in her employment in the pediatrics department under DEFENDANT NACO.

130.    All of a sudden, DEFENDANT COHEN decided to falsely accuse PLAINTIFF of not performing well in pediatrics and not being a good dental assistant.

131.    MDA DEFENDANTS never accused PLAINTIFF of performance deficiencies until PLAINTIFF complained about pregnancy discrimination.

132.    MDA DEFENDANTS never accused PLAINTIFF of unsatisfactory performance until PLAINTIFF sought reasonable accommodations due to her pregnancy.

133.    Up to the point that PLAINTIFF complained about pregnancy discrimination and/or sought accommodations due to her pregnancy, PLAINTIFF was a stellar employee with no performance issues, no corrective action, no write-ups/reprimands, and no counseling related to her performance.

134.    PLAINTIFF had no performance issues at DEFENDANTS MDA / BK&S.

135.    The only thing PLAINTIFF did to cause her to be accused of performance deficiencies was disclose her pregnancy and seek an accommodation due to her pregnancy.

136.    Despite PLAINTIFF denying the false claims being made by DEFENDANTS, NACO and COHEN, DEFENDANT COHEN continued to accuse PLAINTIFF of threatening legal

action, while simultaneously discussing PLAINTIFF'S discrimination concerns.

137. DEFENDANT COHEN yelled, **"*look, you can do whatever you want with a lawyer. But if you want to come back to work, this [pregnancy and/or discrimination] will not be talked about anymore!*"**

138. DEFENDANT COHEN asked PLAINTIFF to **"*come in with a letter*"** clearing PLAINTIFF to be exposed to x-rays.

139. DEFENDANT COHEN further explained that for example: **"*If there is a patient with a toothache in General Practice and you are there, <u>I can't go looking for another girl</u>.*"**

140. DEFENDANT COHEN clarified that if PLAINTIFF is the only assistant present at any particular time/day, MDA DEFENDANTS will require PLAINTIFF to perform x-rays.

141. DEFENDANT COHEN then responded that it was ok for PLAINTIFF to take a few X-rays once in a while and that DEFENDANTS MDA / BK&S could not have the other employees do all of the X-Rays because of PLAINTIFF'S pregnancy.

142. Here, DEFENDANT COHEN asked PLAINTIFF to bring in a doctor's note with employment parameters set by COHEN, as opposed to by PLAINTIFF'S doctor.

143. **<u>DEFENDANT COHEN told PLAINTIFF what her doctor's note should say</u>** as opposed to asking PLAINTIFF'S to provide a doctor's note providing MDA DEFENDANTS with medical restrictions for PLAINTIFF.

144. Here, instead of engaging in a good-faith interactive process, DEFENDANT COHEN was advising PLAINTIFF that her doctor's note better clear PLAINTIFF to perform "*some*" X-Rays.

145. DEFENDANT COHEN also stated, **"*there are lead aprons all of the place and the walls have lead in them,*"** as if aprons and walls with lead paint were an accommodation and/or some form of protection to PLAINTIFF.

146.  DEFENDANT COHEN then stated, **"***that sounds very fair to me and it will give you the security to keep you [employed] here***."**

147.  DEFENDANT COHEN then continued, "***we are offering you continued employment here***" but **"***now I'm concerned that no one - and I've been a dentist for 45 years - no one starts talking about a lawyer***."**

148.  Among other things, DEFENDANT COHEN loudly stated that, "***in his 45 years of practice, no one has ever threatened him with lawyers***."

149.  Again, PLAINTIFF denied that she threatened MDA DEFENDANTS with lawyers or legal action, while DEFENDANT COHEN continued to ignore PLAINTIFF and talk over her.

150.  PLAINTIFF stated, **"***I never said anything about lawyers, I just don't like the fact that I'm being disciplined and sent to General Practice***."**

151.  Once PLAINTIFF said that she was being "disciplined," DEFENDANT COHEN interrupted PLAINTIFF and went-off on a tirade about racial discrimination at DEFENDANTS, MDA and BK&S.

152.  Before PLAINTIFF could finish her sentence, DEFENDANT COHEN angrily slammed on the desk and began yelling, with the assistance of DEFENDANT ORANTES, "***every person here is either, ethnically, Black, Spanish, Russian and I'm the minority here – I'm Jewish***!"

153.  DEFENDANT COHEN continued, now with assistance from the unknown woman in the room, **"***and if you think I haven't heard words that are insulting to me as a Jewish person, I hear it all the time . . . and if I heard someone use the 'N-word' in public to each other in a room, I would make plans in my head to throw them the fuck out of here.***"**

154.  DEFENDANT COHEN also identified himself as a minority – being Jewish – and began to discuss his alleged hardships as a Jewish person in order to dissuade PLAINTIFF from

making a discrimination complaint.

155.    While DEFENDANT COHEN yelled at PLAINTIFF about racial discrimination, the other employees present (including DEFENDANT ORANTES) nodded in agreement and added their own verbal support for DEFENDANT COHEN'S comments.

156.    PLAINTIFF was being ganged-up on and forced to defend herself in all directions, against three managers.

157.    DEFENDANT COHEN'S anger and statements did not address any of PLAINTIFF'S concerns about pregnancy discrimination. Instead, DEFENDANT COHEN'S tirade raised new concerns for PLAINTIFF about racial discrimination/retaliation.

158.    PLAINTIFF did not understand why she was being lectured about racial discrimination and the racial composition of DEFENDANT, MDA and BK&S, when PLAINTIFF never raised any concerns about racial discrimination.

159.    DEFENDANT COHEN decided to make the complaint about race because PLAINTIFF is African American/Black.

160.    DEFENDANT COHEN intended to subject PLAINTIFF to a hostile environment concerning her race in retaliation for making a complaint about pregnancy discrimination.

161.    DEFENDANT COHEN'S loud and intimidating discussion about race, the racial history of DEFENDANT MDA/BK&S, DEFENDANT COHEN'S ethnic background, as well as DEFENDANT COHEN'S legal history caused PLAINTIFF to become even more uncomfortable.

162.    PLAINTIFF did not complain about racial discrimination but was still subjected to discussions about race/color and PLAINTIFF was reprimanded by DEFENDANT COHEN for making a discrimination complaint.

163.    DEFENDANT COHEN had no good faith business justification for attacking PLAINTIFF

about racial issues.

164.    DEFENDANT COHEN then continued, "**so what I'm saying is, enough . . .I never want to hear about lawyers anymore . . . _just because you're pregnant doesn't give you the right to sit on the side and let the other girls do it_**."

165.    DEFENDANT COHEN then continued his instructions to PLAINTIFF to, "**_go to your doctor, get a letter that says 'it is ok, I give my consent, there is no medical reason for Fellicia to not do routine dental duties including taking X-rays and nitrous'_**."

166.    Here, again, DEFENDANT COHEN instructed PLAINTIFF to get a letter saying that she could perform X-rays, and work around nitrous, despite PLAINTIFF'S concern that she should not be around X-rays and nitrous.

167.    DEFENDANT COHEN, in no uncertain terms, told PLAINTIFF to get a doctor's note that cleared her to perform X-rays and handle nitrous.

168.    This <u>was not</u> an accommodation, nor was it a good-faith interactive process designed to see how DEFENDANTS could safely accommodate PLAINTIFF'S pregnancy and health concerns.

169.    PLAINTIFF then explained that her next Doctor's visit was in two weeks and asked if she could come back to work in the meantime.

170.    PLAINTIFF'S request was denied and DEFENDANT COHEN told PLAINTIFF to take a few days (unpaid) and return only when she received the letter from her doctor.

171.    PLAINTIFF then explained that she previously brought in a doctors' note and handed same to "Rosa," which stated that PLAINTIFF could not use nitrous or radiation equipment.

172.    PLAINTIFF explained that the doctor's note indicated that PLAINTIFF should limit her exposure to radiology and X-rays.

173.    DEFENDANT COHEN then responded, "_Ok, so Rosa has a letter,_" but the letter must "**say**

*what I said . . . because I am telling you what you would be required to do here. The*
*reality is that if you had to take an X-ray once in a while there is nothing wrong with*
*that*."

174. DEFENDANT COHEN continued, *"if it was once in a while, I would ask someone else*
     *to do it. I can't disrupt the office because of that*."

175. Again, DEFENDANT COHEN willingly ignored PLAINTIFF'S doctor's note, declined to
     review a doctor's note that PLAINTIFF disclosed was in MDA DEFENDANTS'
     possession, and gave PLAINTIFF his own opinion that there was nothing wrong with
     PLAINTIFF'S taking X-rays.

176. DEFENDANT COHEN also continued to refuse PLAINTIFF'S request for
     accommodations, outright, without reviewing any medical evidence from PLAINTIFF.

177. DEFENDANT COHEN made it clear to PLAINTIFF that she had no other option if she
     wanted to continue working at DEFENDANTS MDA / BK&S – PLAINTIFF had to bring
     in a doctor's note clearing her to perform X-rays.

178. DEFENDANT COHEN also made it clear that PLAINTIFF would no longer be working
     under DEFENDANT NACO at DEFENDANT BK&S, wherein PLAINTIFF worked at all
     times previously before she disclosed her pregnancy and asked for an accommodation.

179. DEFENDANT COHEN supported, condoned, and ratified DEFENDANT NACO'S
     decision to terminate or transfer PLAINTIFF for engaging in protected activities.

180. DEFENDANT COHEN told PLAINTIFF that PLAINTIFF was being transferred out of
     the Pediatrics department, under NACO, and was being moved to General Practice.

181. PLAINTIFF then asked if she had to be transferred to General Practice and instead asked
     to be transferred to a different department, like the Periodontal Department.

182. To PLAINTIFF, the transfer from pediatrics to general practice was a demotion as it was a

move from a specialized area to a general area.

183. DEFENDANT COHEN then angrily asked PLAINTIFF "*you don't want to work in GP*?"
PLAINTIFF was intimidated by his angry tone and did not immediately answer this
question due to fear.

184. But, before PLAINTIFF could answer the question, within seconds, DEFENDANT
COHEN then angrily stated, "***then you can't work here***" and began yelling at PLAINTIFF
once more.

185. DEFENDANT COHEN then began to insult PLAINTIFF while in front of DEFENDANT
ORANTES and the other employee and stated, "***it's my office! . . . so far, all I know about***
***you is, excuse my English, that*** <u>***dealing with you is a pain in the ass***</u>***!***"

186. DEFENDANT COHEN continued yelling and humiliating PLAINTIFF, stating, "***I have***
***an issue with you now***! ***You were in Pedo and it failed! I wanted to move you to GP and***
***you don't want to go there!***"

187. As PLAINTIFF stated, "***no, I don't mind*** *[going to GP]*," DEFENDANT COHEN loudly
cut-off PLAINTIFF from speaking and said, "***good luck to you***" and terminated
PLAINTIFF'S employment.

188. PLAINTIFF, <u>again</u>, stated that she "*did not mind*" and "*would like to work in GP, [she]*
*just wanted to suggest an area that was more active.*"

189. Nevertheless, DEFENDANT COHEN unreasonably continued to talk-over PLAINTIFF
and stated, "<u>***you've already killed a half-hour of my day, so please leave!***</u>" and confirmed
that he terminated PLAINTIFF.

190. While DEFENDANT COHEN was telling PLAINTIFF that she "*killed a half-hour*" of his
day, DEFENDANT ORANTES and the other employee in the room were yelling and/or
commenting at PLAINTIFF at the same time.

191.   PLAINTIFF was unfairly attacked from all sides as she sat in shock and distress because she was just terminated.

192.   PLAINTIFF began to helplessly apologize to DEFENDANT COHEN while DEFENDANT COHEN continued to rudely yell at PLAINTIFF to, **"*Please leave. Please leave!*"**

193.   As PLAINTIFF begged and pled for her job, DEFENDANT COHEN callously continued to tell PLAINTIFF to get out of his office and presence.

194.   Humiliated, PLAINTIFF was forced to get up and leave MDA DEFENDANTS' office and was terminated on the spot.

195.   PLAINTIFF was *wrongfully* terminated for engaging in protected activities and for being pregnant.

196.   MDA DEFENDANTS had no good faith business justification for their concerted and individual actions against PLAINTIFF.

197.   PLAINTIFF was subjected to a hostile work environment that was permeated with insults, ridicule, harassment, discriminatory comments, adverse employment actions, summary disciplines, unfair disciplines, suspension, demotion, yelling, threats against employment, and humiliation.

198.   PLAINTIFF then left the meeting incredibly distraught, emotional, humiliated, and anxious because she was fired, while pregnant, and was worried about finding new employment while pregnant.

199.   MDA DEFENDANTS never gave PLAINTIFF any opportunity (in good faith or otherwise) to remain employed by MDA DEFENDANTS.

200.   Upon information and belief, MDA DEFENDANTS did not have an anti-discrimination policy in place.

201. If MDA DEFENDANTS had an anti-discrimination and/or anti-retaliation policy in place, MDA DEFENDANTS clearly did not adhere to same and said policies were futile.

202. MDA DEFENDANTS did not take their policies concerning discrimination seriously and did not feel bound to follow any such policies.

203. INDIVIDUAL DEFENDANTS had duties and obligations to prevent discrimination and retaliation in the workplace.

204. Nevertheless, INDIVIDUAL DEFENDANTS condoned, supported, furthered, and ratified discriminatory conduct of their employer/principal, DEFENDANTS MDA / BK&S, employees to the detriment of PLAINTIFF.

205. PLAINTIFF'S complaints and attempts to seek accommodations were futile.

206. At all times, INDIVIDUAL DEFENDANTS were individually and collectively acting pursuant to their authorities as employees, agents, and representatives of DEFENDANTS MDA / BK&S.

207. But for their positions of authority within DEFENDANTS MDA /BK&S, INDIVIDUAL DEFENDANTS would not have been able to subject PLAINTIFF to the discriminatory/retaliatory treatment alleged herein.

208. As a result of MDA DEFENDANTS' actions, PLAINTIFF was extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

209. As a result of MDA DEFENDANTS' discriminatory treatment of PLAINTIFF, she suffered severe physical and emotional distress and irreversible injury.

210. PLAINTIFF was unlawfully humiliated, degraded, and belittled, suffered a violation of her rights.

211. PLAINTIFF suffered mental and emotional distress, loss of income/earnings, inconvenience, pain and suffering, extreme financial hardship, adverse employment

actions, suspension, loss of employment, loss of employment benefits, humiliation, stress, anxiety, embarrassment, special damages, and emotional distress. PLAINTIFF has also suffered future pecuniary losses, emotional pain, inconvenience, loss of enjoyment of life, physical injuries, physical conditions, and other non-pecuniary losses.

212.    MDA DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

213.    As such, PLAINTIFF demands Punitive Damages as against all MDA DEFENDANTS, jointly and severally.

**AS A FIRST CASE OF ACTION**
**FOR *DISCRIMINATION* UNDER TITLE VII**
***(Against Defendants MDA & BK&S)***

214.    PLAINTIFF repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this complaint.

215.    The Pregnancy Discrimination Act of Title VII prohibits discrimination in the terms and conditions of employment and the discharge of an employee based on the employee's **pregnancy**. 42 U.S.C. §§2000e-2(a)(1), 2000e(k).

216.    MDA DEFENDANTS engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e *et seq*., by discriminating against PLAINTIFF because of her pregnancy as set forth above.

217.    This claim is also authorized and instituted pursuant to the provisions of Title VII of the *Civil Rights Act of 1964*, 42 U.S.C. Section(s) 2000e et seq., for relief based upon the unlawful employment practices of DEFENDANTS MDA / BK&S. PLAINTIFF complains of DEFENDANTS MDA'S / BK&S'S violation of Title VII's prohibition against discrimination in employment-based, in whole or in part, upon an employee's **race/color**.

218.    DEFENDANTS MDA/BK&S engaged in unlawful employment practices prohibited by

42 U.S.C. § 2000e et seq., by discriminating against PLAINTIFF because of her race/color.

219. MDA DEFENDANTS were aware that PLAINTIFF was pregnant, as well as PLAINTIFF'S race and color.

220. PLAINTIFF informed MDA DEFENDANTS about her pregnancy.

221. Upon learning of her pregnancy, MDA DEFENDANTS, collectively and/or individually, discriminated against PLAINTIFF on the basis of said pregnancy by terminating her employment; refusing to hire PLAINTIFF for positions for which she was qualified; subjecting PLAINTIFF to adverse employment actions; subjecting PLAINTIFF to discriminatory comments, statements and opinions about her pregnancy; and by exposing her to ridicule, insult and humiliation until her termination.

222. MDA DEFENDANTS had no good faith business justification for any of the actions taken against PLAINTIFF.

223. INDIVIDUAL DEFENDANTS condoned, supported, furthered, and ratified discriminatory conduct against PLAINTIFF on behalf of their employer, DEFENDANTS MDA / BK&S.

224. At all times, INDIVIDUAL DEFENDANTS were each individually and collectively acting pursuant to their authorities as employees, agents, and representatives of DEFENDANT MDA / BK&S.

225. But for their positions of authority within MDA / BK&S, INDIVIDUAL DEFENDANTS would not have been able to subject PLAINTIFF to the discriminatory/retaliatory treatment alleged herein.

226. DEFENDANTS MDA / BK&S are strictly liable for the conduct of its managers and supervisors against PLAINTIFF.

227. As a result of MDA DEFENDANTS' discriminatory treatment of PLAINTIFF,

PLAINTIFF suffered severe emotional distress.

228.    PLAINTIFF was unlawfully humiliated, degraded, and belittled, suffered a violation of her rights, mental and emotional distress, loss of income/earnings, inconvenience, pain and suffering, extreme financial hardship, loss of employment, loss of employment benefits, humiliation, stress, anxiety, embarrassment, special damages, and emotional distress. Plaintiff has also suffered future pecuniary losses, emotional pain, inconvenience, loss of enjoyment of life, physical injuries, physical conditions, and other non-pecuniary losses.

229.    MDA DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

230.    PLAINTIFF is entitled to the maximum amount of damages allowed under this statute.

**AS A SECOND CASE OF ACTION**
**FOR *RETALIATION* UNDER TITLE VII**
***(Against DEFENDANT MDA / BK&S)***

231.    PLAINTIFF repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint.

232.    Title VII, at 42 U.S.C. § 2000e-3(a), provides that it shall be unlawful employment practice for an employer:

> (1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

233.    MDA DEFENDANTS violated the sections cited herein as set forth.

234.    PLAINTIFF informed MDA DEFENDANTS of her **gender, pregnancy, race, and color.**

235.    PLAINTIFF engaged in protected activity by informing MDA DEFENDANTS of her pregnancy, putting them on notice she would require reasonable accommodations.

236.    MDA DEFENDANTS retaliated against PLAINTIFF by wrongfully terminating

PLAINTIFF'S employment while she was pregnant, causing significant stress on PLAINTIFF.

237.    Additionally, MDA DEFENDANTS did not offer PLAINTIFF a position for which she was qualified instead of wrongfully terminating her employment.

238.    At all times, MDA DEFENDANTS were aware of their obligation to stop, prevent, investigate and correct discriminatory practices in their facility, but refused to do so as it related to the female PLAINTIFF herein.

239.    MDA DEFENDANTS had no good faith business justification for any of the actions taken against PLAINTIFF as alleged herein.

240.    As a result of MDA DEFENDANTS' actions, PLAINTIFF was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

241.    PLAINTIFF was unlawfully humiliated, degraded, and belittled, suffered a violation of her rights, mental and emotional distress, loss of income/earnings, inconvenience, pain and suffering, extreme financial hardship, loss of employment, loss of employment benefits, humiliation, stress, anxiety, embarrassment, special damages, and emotional distress. Plaintiff has also suffered future pecuniary losses, emotional pain, inconvenience, loss of enjoyment of life, physical injuries, physical conditions and other non-pecuniary losses.

242.    MDA DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

243.    PLAINTIFF is entitled to the maximum amount of damages allowed under this statute.

### AS A THIRD CAUSE OF ACTION FOR *DISCRIMINATION / RETALIATION UNDER 42 U.S.C. § 1981 (As Amended)* *(Against DEFENDANTS MDA, BK&S, COHEN, and ORANTES Collectively and Individually)*

229.    PLAINTIFF repeats, reiterates, and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

230.    42 U.S.C. § 1981 states in relevant part as follows:

    (a)  Statement of equal rights

        All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

    (b)  "Make and enforce contracts" defined

        For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

    42 U.S.C. §1981.

231.    PLAINTIFF, who is African American/Black, was discriminated against, prevented from entering into or performing contracts, denied equal enjoyment of benefits and privileges of employment, and removed from employment because of her race/color as provided under 42 U.S.C. § 1981 and has suffered damages as set forth herein.

232.    PLAINTIFF made a complaint about pregnancy discrimination and was berated about racial issues and race by her managers/supervisors, DEFENDANTS, COHEN and ORANTES.

233.    PLAINTIFF was effectively denied full and equal benefit of all laws and immunities as an employee of DEFENDANTS, MDA and BK&S, and was denied the right to contract with DEFENDANTS MDA / BK&S based, in part, on her race/color.

234.    PLAINTIFF was subjected to unlawful discrimination and retaliation at DEFENDANTS MDA /BK&S by her managers and supervisors, in the presence of and/or with the knowledge of DEFENDANTS, COHEN and ORANTES.

235.    While in the process of responding to PLAINTIFF'S pregnancy concerns/complaints,

DEFENDANT COHEN decided to berate PLAINTIFF about race and racial issues at DEFENDANTS MDA and BK&S.

236.   The only reason that MDA DEFENDANTS attacked PLAINTIFF about racial issues is because PLAINTIFF is an African American / Black employee that complained about discrimination in the workplace.

237.   But for PLAINTIFF'S race/color, MDA DEFENDANTS would not have responded to her pregnancy complaints with racial issues and intimidation concerning racial issues.

238.   PLAINTIFF was terminated in retaliation for engaging in the above-described protected activities and for seeking equal treatment under the laws of the State as well as under the laws, rules, procedures, manuals, and promises of DEFENDANTS MDA / BK&S.

239.   As a result, PLAINTIFF was unlawfully humiliated, degraded, and belittled, suffered a violation of his rights, mental and emotional distress, loss of income/earnings, inconvenience, pain and suffering, extreme financial hardship, loss of employment, loss of employment benefits, humiliation, stress, anxiety, embarrassment, special damages, and emotional distress. PLAINTIFF has also suffered future pecuniary losses, emotional pain, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

240.   MDA DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

241.   PLAINTIFF is entitled to the maximum amount of damages allowed under this statute.

## FOURTH CAUSE OF ACTION FOR *DISCRIMINATION* UNDER THE NEW YORK STATE EXECUTIVE LAW

242.   PLAINTIFF repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this complaint.

243.   New York State Executive Law § 296(1) provides that:

It shall be an unlawful discriminatory practice: (a) For an employer

> or licensing agency, because of an individual's . . . sex . . . to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

244. MDA DEFENDANTS violated the sections cited herein as set forth.

245. MDA DEFENDANTS, collectively and/or individually, discriminated against PLAINTIFF on the basis of her sex/gender/pregnancy/race/color by terminating her employment for pretextual reasons and not accommodating PLAINTIFF.

246. MDA DEFENDANTS were aware that PLAINTIFF was pregnant, as well as PLAINTIFF'S race/color.

247. PLAINTIFF informed each and every MDA DEFENDANTS about her pregnancy.

248. Upon learning of her pregnancy, MDA DEFENDANTS, collectively and/or individually discriminated against PLAINTIFF on the basis of said pregnancy by terminating her employment; refusing to hire PLAINTIFF for positions for which she was qualified; subjecting PLAINTIFF to adverse employment actions; threatening PLAINTIFF'S employment and by exposing her to ridicule, insult and humiliation until her termination.

249. MDA DEFENDANTS had no good faith business justification for any of the actions taken against PLAINTIFF.

250. INDIVIDUAL DEFENDANTS condoned, supported, furthered, and ratified discriminatory conduct against PLAINTIFF on behalf of their employer, DEFENDANTS MDA / BK&S.

251. At all times, INDIVIDUAL DEFENDANTS were each individually and collectively acting pursuant to their authorities as employees, agents, and representatives of DEFENDANT MDA / BK&S.

252. But for their positions of authority within MDA / BK&S, INDIVIDUAL DEFENDANTS would not have been able to subject PLAINTIFF to the discriminatory/retaliatory treatment

alleged herein.

253. DEFENDANT MDA / BK&S are strictly liable for the conduct of their managers and supervisors INDIVIDUAL DEFENDANTS against PLAINTIFF.

254. As a result of MDA DEFENDANTS' discriminatory treatment of PLAINTIFF, PLAINTIFF suffered severe emotional distress.

255. PLAINTIFF was unlawfully humiliated, degraded, and belittled, suffered a violation of her rights, mental and emotional distress, loss of income/earnings, inconvenience, pain and suffering, extreme financial hardship, loss of employment, loss of employment benefits, humiliation, stress, anxiety, embarrassment, special damages, and emotional distress. Plaintiff has also suffered future pecuniary losses, emotional pain, inconvenience, loss of enjoyment of life, physical injuries, physical conditions, and other non-pecuniary losses.

256. MDA DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

257. PLAINTIFF is entitled to the maximum amount of damages allowed under this statute.

## AS A FIFTH CAUSE OF ACTION FOR *RETALIATION* UNDER THE NEW YORK STATE EXECUTIVE LAW

258. PLAINTIFF repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this complaint.

259. New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

260. MDA DEFENDANTS violated the sections cited herein as set forth.

261. PLAINTIFF informed MDA DEFENDANTS of her pregnancy.

262. PLAINTIFF engaged in protected activity by informing MDA DEFENDANTS of her

pregnancy, putting them on notice she would require accommodations.

263. MDA DEFENDANTS retaliated against PLAINTIFF by wrongfully terminating PLAINTIFF'S employment while she was pregnant, causing severe stress.

264. Additionally, MDA DEFENDANTS did not offer PLAINTIFF a position for which she was qualified instead of terminating her employment.

265. At all times, MDA DEFENDANTS were aware of their obligation to stop, prevent, investigate and correct discriminatory practices in their facility, but refused to do so as it related to the female PLAINTIFF herein.

266. MDA DEFENDANTS had no good faith business justification for any of the actions taken against PLAINTIFF as alleged herein.

267. As a result of MDA DEFENDANTS' actions, PLAINTIFF was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

268. PLAINTIFF was unlawfully humiliated, degraded, and belittled, suffered a violation of her rights, mental and emotional distress, loss of income/earnings, inconvenience, pain and suffering, extreme financial hardship, loss of employment, loss of employment benefits, humiliation, stress, anxiety, embarrassment, special damages, and emotional distress. Plaintiff has also suffered future pecuniary losses, emotional pain, inconvenience, loss of enjoyment of life, physical injuries, physical conditions, and other non-pecuniary losses.

269. MDA DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

270. PLAINTIFF is entitled to the maximum amount of damages allowed under this statute.

### AS A SIXTH CAUSE OF ACTION FOR *DISCRIMINATION/RETALIATION* UNDER THE NEW YORK STATE EXECUTIVE LAW
*(Individual Liability Against INDIVIDUAL DEFENDANTS COHEN, NACO and ORANTES)*

271. PLAINTIFF repeats, reiterates, and realleges each and every allegation made in the above

paragraphs of this Complaint.

272.  <u>New York State Executive Law</u> § 296(6) provides that it shall be an unlawful discriminatory practice: "For any **person to aid, abet**, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

273.  INDIVIDUAL DEFENDANTS violated the section cited herein as set forth and were each personally involved in the discriminatory and retaliatory actions about which PLAINTIFF complains herein.

274.  INDIVIDUAL DEFENDANTS utilized their powers, authorities, statuses, and positions to subject PLAINTIFF to the wrongful treatment outlined in this Complaint.

275.  But for INDIVIDUAL DEFENDANTS' positions with/at MDA / BK&S, INDIVIDUAL DEFENDANTS would not have been able or authorized to take and continue their discriminatory and retaliatory campaign against PLAINTIFF.

276.  At all times relevant to the Complaint, while employed at DEFENDANTS MDA / BK&S, PLAINTIFF was continuously subjected to discriminatory comments/intimidation, differential treatment, wrongful termination, and other discriminatory/retaliatory actions as alleged above.

277.  INDIVIDUAL DEFENDANTS, acting pursuant to their authority, ignored DEFENDANTS MDA'S / BK&S' own policies, procedures, and rules (if any) regarding discriminatory behavior in the workplace.

278.  At all times, INDIVIDUAL DEFENDANTS were aware of their obligations to stop, prevent, investigate and correct discriminatory practices against PLAINTIFF.

279.  INDIVIDUAL DEFENDANTS are individually liable for aiding and abetting the discriminatory actions of their employer, DEFENDANT MDA / BK&S.

280.  INDIVIDUAL DEFENDANTS had no good faith business justification for any of the

actions taken against PLAINTIFF as alleged herein.

281.    As a result of MDA DEFENDANTS' discriminatory treatment of PLAINTIFF, she has

suffered severe emotional distress.

282.    PLAINTIFF was unlawfully humiliated, degraded, and belittled, suffered a violation of her

rights, mental and emotional distress, loss of income/earnings, inconvenience, pain and

suffering, extreme financial hardship, loss of employment, loss of employment benefits,

humiliation, stress, anxiety, embarrassment, special damages, and emotional distress.

Plaintiff has also suffered future pecuniary losses, emotional pain, inconvenience, loss of

enjoyment of life, physical injuries, physical conditions, and other non-pecuniary losses.

283.    MDA DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted

with full knowledge of the law.

284.    PLAINTIFF is entitled to the maximum amount of damages allowed under this statute.

### AS A SEVENTH CAUSE OF ACTION FOR *DISCRIMINATION* UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

285.    PLAINTIFF repeats, reiterates, and realleges each and every allegation made in the above

paragraphs of this complaint.

286.    The <u>New York City Administrative Code</u> § 8-107(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer
> or an employee or agent thereof, because of the actual or perceived
> age, race, creed, color, national origin, gender, disability, marital
> status, sexual orientation or alienage or citizenship status of any
> person, to refuse to hire or employ or to bar or to discharge from
> employment such person or to discriminate against such person in
> compensation or in terms, conditions or privileges of employment.

287.    MDA DEFENDANTS were aware that PLAINTIFF was pregnant, as well as

PLAINTIFF'S gender, race, and color.

288.    PLAINTIFF informed each and every MDA DEFENDANT about her pregnancy and

sought reasonable accommodations therefor.

289.    Upon learning of her pregnancy, MDA DEFENDANTS, collectively and/or individually discriminated against PLAINTIFF on the basis of said pregnancy by (*inter alia*) refusing to hire/transfer PLAINTIFF to positions for which she was qualified; refusing to accommodate PLAINTIFF; refusing to engage in an interactive process with PLAINTIFF; suggesting that PLAINTIFF terminate her pregnancy to remain employed; subjecting PLAINTIFF to adverse employment actions; singling-out PLAINTIFF for verbal and psychological abuse; and by exposing her to ridicule, insult and humiliation until her termination.

290.    MDA DEFENDANTS had no good faith business justification for any of the actions taken against PLAINTIFF.

291.    DEFENDANTS MDA / BK&S condoned, supported, furthered, and ratified discriminatory conduct against PLAINTIFF by its employees INDIVIDUAL DEFENDANTS.

292.    At all times, INDIVIDUAL DEFENDANTS were each individually and collectively acting pursuant to their authorities as employees, agents, and representatives of DEFENDANTS MDA / BK&S.

293.    But for their positions of authority within MDA / BK&S, INDIVIDUAL DEFENDANTS would not have been able to subject PLAINTIFF to the discriminatory/retaliatory treatment alleged herein.

294.    DEFENDANT MDA / BK&S is strictly liable for the conduct of their managers and supervisors against PLAINTIFF.

295.    As a result of MDA DEFENDANTS' discriminatory treatment of PLAINTIFF, she has suffered severe emotional distress.

296.    PLAINTIFF was unlawfully humiliated, degraded, and belittled, suffered a violation of her rights, mental and emotional distress, loss of income/earnings, inconvenience, pain and

suffering, extreme financial hardship, loss of employment, loss of employment benefits, humiliation, stress, anxiety, embarrassment, special damages, and emotional distress. Plaintiff has also suffered future pecuniary losses, emotional pain, inconvenience, loss of enjoyment of life, physical injuries, physical conditions, and other non-pecuniary losses.

297.    MDA DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

298.    DEFENDANTS MDA / BK&S are **vicariously liable** for the conduct of their employees, INDIVIDUAL DEFENDANTS.

299.    PLAINTIFF is entitled to the maximum amount of damages allowed under this statute.

**AS AN EIGHTH CAUSE OF ACTION FOR *RETALIATION***
**UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**

300.    PLAINTIFF repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint.

301.    The New York City Administrative Code § 8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter."

302.    MDA DEFENDANTS violated the sections cited herein as set forth.

303.    PLAINTIFF informed MDA DEFENDANTS of her pregnancy.

304.    PLAINTIFF engaged in protected activity by informing MDA DEFENDANTS of her pregnancy, putting them on notice she would require accommodations.

305.    In response, PLAINTIFF was forced to endure a discriminatory hostile work environment insofar as PLAINTIFF was continuously subjected to differential treatment, discriminatory/unfair comments, statements, adverse employment actions, threats against employment, hostile work environment, ridicule, humiliation, failure to hire, and other discriminatory/retaliatory actions by MDA DEFENDANTS.

306.   MDA DEFENDANTS retaliated against PLAINTIFF by wrongfully terminating PLAINTIFF'S employment while she was pregnant, causing severe stress.

307.   Additionally, MDA DEFENDANTS did not offer PLAINTIFF a position for which she was qualified instead of terminating her employment.

308.   At all times, MDA DEFENDANTS were aware of their obligation to stop, prevent, investigate and correct discriminatory practices in their facility, but refused to do so as it related to the female PLAINTIFF herein.

309.   MDA DEFENDANTS had no good faith business justification for any of the actions taken against PLAINTIFF as alleged herein.

310.   As a result of MDA DEFENDANTS' actions, PLAINTIFF was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

311.   PLAINTIFF was unlawfully humiliated, degraded, and belittled, suffered a violation of her rights, mental and emotional distress, loss of income/earnings, inconvenience, pain and suffering, extreme financial hardship, loss of employment, loss of employment benefits, humiliation, stress, anxiety, embarrassment, special damages, and emotional distress. Plaintiff has also suffered future pecuniary losses, emotional pain, inconvenience, loss of enjoyment of life, physical injuries, physical conditions, and other non-pecuniary losses.

312.   MDA DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

313.   DEFENDANTS MDA / BK&S are **vicariously liable** for the conduct of their employees, INDIVIDUAL DEFENDANTS.

314.   PLAINTIFF is entitled to the maximum amount of damages allowed under this statute.

### AS A NINTH CAUSE OF ACTION FOR *DISCRIMINATION/RETALIATION* UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
*(Individual Liability Against DEFENDANTS COHEN, NACO and ORANTES)*

315. PLAINTIFF repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint.

316. The <u>New York City Administrative Code</u> § 8-107(6) provides that it shall be unlawful discriminatory practice: "For **any person to aid, abet**, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

317. INDIVIDUAL DEFENDANTS violated the section cited herein as set forth and were each personally involved in the discriminatory and retaliatory actions about which PLAINTIFF complains herein.

318. INDIVIDUAL DEFENDANTS utilized their powers, authorities, statuses, and positions to subject PLAINTIFF to the wrongful treatment outlined in this Complaint.

319. But for INDIVIDUAL DEFENDANTS' positions with/at DEFENDANTS MDA / BK&S, INDIVIDUAL DEFENDANTS would not have been able or authorized to take and continue their discriminatory and retaliatory campaign against PLAINTIFF.

320. At all times relevant to the Complaint, while employed at DEFENDANTS MDA / BK&S, PLAINTIFF was continuously subjected to discriminatory comments/intimidation, differential treatment, adverse employment actions, wrongful termination, and other discriminatory/retaliatory actions as alleged above.

321. INDIVIDUAL DEFENDANTS, acting pursuant to their authorities, ignored DEFENDANTS MDA'S / BK&S' own policies, procedures, and rules (if any) regarding discriminatory behavior in the workplace generally in particular.

322. At all times, INDIVIDUAL DEFENDANTS were aware of their obligations to stop, prevent, investigate and correct discriminatory practices against PLAINTIFF.

323. INDIVIDUAL DEFENDANTS are individually liable for aiding and abetting the discriminatory actions of their employer, DEFENDANTS MDA / BK&S.

324.    INDIVIDUAL DEFENDANTS had no good faith business justification for any of the actions taken against PLAINTIFF as alleged herein.

325.    As a result of MDA DEFENDANTS' discriminatory treatment of PLAINTIFF, PLAINTIFF suffered severe emotional distress.

326.    PLAINTIFF was unlawfully humiliated, degraded, and belittled, suffered a violation of her rights, mental and emotional distress, loss of income/earnings, inconvenience, pain and suffering, extreme financial hardship, loss of employment, loss of employment benefits, humiliation, stress, anxiety, embarrassment, special damages, and emotional distress. Plaintiff has also suffered future pecuniary losses, emotional pain, inconvenience, loss of enjoyment of life, physical injuries, physical conditions, and other non-pecuniary losses.

327.    MDA DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

328.    DEFENDANTS MDA / BK&S are **<u>vicariously liable</u>** for the conduct of their employees, INDIVIDUAL DEFENDANTS.

329.    PLAINTIFF is entitled to the maximum amount of damages allowed under this statute.

## **<u>JURY DEMAND</u>**

330.    PLAINTIFF requests a jury trial on all issues to be tried.

**WHEREFORE**, PLAINTIFF respectfully requests a judgment against MDA DEFENDANTS:

A.    Declaring that MDA DEFENDANTS' engaged in unlawful employment practices prohibited by <u>Title VII</u>; <u>42 U.S.C</u> § 1981; the <u>NYSHRL</u>; and the <u>NYCHRL</u>, in that MDA DEFENDANTS' <u>discriminated against</u> PLAINTIFF based on her sex/gender, pregnancy, race/color and <u>retaliated against</u> for engaging in protected activity;

B.    Awarding damages to PLAINTIFF for all losses resulting from MDA DEFENDANTS'

unlawful discrimination and conduct and to otherwise make PLAINTIFF whole for any

losses suffered because of such unlawful employment practices;

C.      Awarding PLAINTIFF compensatory damages for mental and emotional injury,

distress, pain, suffering, and injury to PLAINTIFF'S reputation in an amount to be

proven;

D.      Awarding PLAINTIFF punitive damages;

E.      Awarding PLAINTIFF attorneys' fees, costs, and expenses incurred in the prosecution

of the action; and

F.      Awarding PLAINTIFF such other and further relief as the Court may deem equitable,

just, and proper to remedy MDA DEFENDANTS' unlawful employment practices.

Dated: New York, New York
       January 29, 2021

**PHILLIPS & ASSOCIATES,**
**ATTORNEYS AT LAW, PLLC**

**/S/**

_____
Gregory Calliste, Jr., Esq.
Yusha D. Hiraman, Esq.
*Attorneys for Plaintiff*
45 Broadway, Suite 430
New York, New York 10006
T: (212) 248-7431
F: (212) 901 - 2107
gcalliste@tpglaws.com
yhiraman@tpglaws.com