UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____x

FELLICIA BROWN,

Plaintiff,

-against-

METROPOLITAN DENTAL ASSOCIATES, et al.,

Defendants.

_____x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/10/23

No. 21-cv-851 (CM)

## DECISION AND ORDER GRANTING IN PART AND DENYING IN PART
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

McMahon, J.

Plaintiff Fellicia Brown ("Plaintiff") brings this action under Title VII of the Civil Rights

Act of 1964 ("Title VII"), 42 U.S.C. § 1981 ("§ 1981"), the New York State Human Rights Law

("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"), seeking relief against

her former employers and supervisors for employment discrimination and retaliation. Defendants

Metropolitan Dental Associates, D.D.S. P.C. ("MDA"), Broadway Kids & Smiles Pediatric

Dentistry of NY ("BK&S"), Dr. Paul Cohen, Dr. Kathy Naco, and Mario Orantes have moved

for summary judgment pursuant to Federal Rule of Civil Procedure 56. *See* Dkt. No. 33. For the

reasons discussed below, that motion is granted in part, denied in part.

**BACKGROUND**

### I.    Parties

Plaintiff Fellicia Brown is an African-American woman and mother of two children, residing in Brooklyn, NY. Dkt. No. 36, Defendants' 56.1 Statement of Material Facts ("Dfts.' 56.1") ¶ 1; Dkt. No. 35-1, Plaintiff's Deposition Transcript ("Pl. Depo. Tr.") at 5:17-18; 9:20-24; 69:11-19. Plaintiff has worked as a dental assistant for ten years and is certified by the State of New York. Dfts.' 56.1 ¶¶ 2-3. Plaintiff was at all relevant times employed by Defendants MDA and BK&S until her employment ceased on October 3, 2019. *Id.* at ¶ 9; Dkt No. 1, Complaint ("Compl.") ¶¶ 22, 36.

Defendant Metropolitan Dental Associates, D.D.S. P.C., is a medical practice specializing in dentistry located at 225 Broadway, New York, NY 10007. Dfts.' 56.1 ¶ 4.

Defendant Broadway Kid & Smiles Pediatric Dentistry of NY is a dental practice specializing in pediatric dentistry also located at 225 Broadway, New York, NY 10007. Dfts.' 56.1 ¶ 5. BK&S is a "sister corporation" to MDA, with both corporations sharing ownership, certain facilities, and policies. Dkt. No. 35-2, Orantes Deposition Transcript ("Orantes Depo. Tr.") at 10:6-25; 11:1-6. BK&S does not typically interchange employees with MDA, although this occurs when one corporation is short-staffed. *Id.* at 11:7-20. BK&S maintains a reception, offices, and an x-ray machine separate from MDA. Dkt. No. 35-4, Naco Deposition Transcript ("Naco Depo. Tr.") at 20:18-25; 21:1-2.

Defendant Dr. Paul Cohen is the sole owner of MDA and, by extension, BK&S. Dfts.' 56.1 ¶ 6. Dr. Cohen is a dentist, although as owner of the corporations he rarely performs dental work. Dkt. No. 35-3, Cohen Deposition Transcript ("Cohen Depo. Tr.") at 19:16-20; 24:18-23.

Defendant Dr. Kathy Naco is a dentist employed by BK&S. Dfts.' 56.1 ¶ 8. Plaintiff was assigned to work with Dr. Naco during her tenure at BK&S. Pl. Depo. Tr. at 18:17-21.

Defendant Mario Orantes is office manager of MDA and, by extension, BK&S. Dfts.' 56.1 ¶ 7. Mr. Orantes hired Plaintiff, set her schedule and rate of pay, and assigned her to work with Dr. Naco. *Id.* at ¶ 10.

## II.    Summary of Facts

In May 2019, Plaintiff began working as a dental assistant at MDA and BK&S. *Id.* at ¶ 9. As a dental assistant, Plaintiff's job responsibilities included greeting patients, sterilizing instruments, cleaning and setting up rooms, moving machinery, and taking x-rays. Pl. Depo. Tr. at 19:4-13; 28:11-22; Naco Depo. Tr. at 14:25; 15:1-9. Dental assistants are also often present during the administration of nitrous gas to patients, although they do not administer the gas itself. Naco Depo. Tr. at 17:14-25; 18:1-8.

On July 5, 2019, Plaintiff learned of her pregnancy. Dfts.' 56.1 ¶ 14; Pl. Depo. Tr. at 21:21-25; 22:2-7. At that time, Plaintiff was advised by physicians at Kings County Hospital that her pregnancy was high risk due to her age. Pl. Depo. Tr. at 23:21-25; 24:6-24. Plaintiff was directed to avoid nitrous oxide and x-ray radiation to protect her unborn child. *Id.*

Shortly thereafter, Plaintiff told Dr. Naco in person that she was pregnant. Dkt. No. 39, Plaintiff's 56.1 Counterstatement of Material Facts ("Pl.'s 56.1") ¶ 18. Plaintiff asked Dr. Naco to keep her away from nitrous oxide and x-ray radiation consistent with the medical advice she received from her physicians. *Id.* at ¶ 19. Dr. Naco denied Plaintiff's request for accommodation without providing a reason and advised Plaintiff to continue working. *Id.* at ¶ 26; Pl. Depo. Tr. at 28:23-25; 29:6-8; 30:11-22. Dr. Naco was aware that nitrous is a potential risk factor for

3

pregnancy, and she would advise pregnant parents of patients to leave the room during the administration of nitrous for safety reasons. Naco Depo. Tr. at 87:3-25. Dr. Naco was also aware that x-rays may expose harmful radiation to developing children, possibly causing birth defects. *Id.* at 88:1-20.

After Plaintiff advised Dr. Naco that she was pregnant, Dr. Naco asked Plaintiff if she planned on keeping her child as doing so would hinder Plaintiff in performing her duties as a dental assistant. Pl.'s 56.1 ¶¶ 27-28. Dr. Naco allegedly berated Plaintiff for her work performance on numerous occasions, in front of patients and coworkers, in a way that she had never done before Plaintiff requested the accommodations. Pl. Depo. Tr. at 58:15-22; 59:3-5; 93:24-25; 94:2-23; 95:9-25; 96:2-5. Dr. Naco also told Plaintiff that new dental assistants would be hired, which Plaintiff understood as a threat to her employment. *Id.* at 56:4-10. On one occasion in September 2019, Plaintiff was sent home by Dr. Naco; Plaintiff believes she was sent home as she was unable to take x-rays or be in the room with nitrous gas. Pl.'s 56.1 ¶ 32.

Dr. Naco maintains that she never yelled at Plaintiff, discussed with Plaintiff whether she planned on keeping her child, advised Plaintiff that new dental assistants would be hired, or criticized Plaintiff's job performance—other than indicating to Dr. Cohen that Plaintiff was "slow." Naco Depo. Tr. at 106:13-25; 107:6-25; 108:1-25; 109:1-8. Dr. Naco similarly maintains that she never sent Plaintiff home and that she lacks the authority to do so. *Id.* at 111:2-12.

Plaintiff, after approximately five days at home, called Mr. Orantes several times to complain about Dr. Naco and inquire about returning to work. Pl.'s 56.1 ¶¶ 36-39; Pl. Depo. Tr. at 61:6-22; 62:11-24; 96:10-19. Mr. Orantes provided Plaintiff little insight into her work situation and advised that she refrain from calling him. Pl. Depo. Tr. at 62:14-24; 97:18-25; 98:2-5. Plaintiff had previously discussed her pregnancy with Mr. Orantes and asked to be kept from

4

x-rays and nitrous gas. Pl.'s 56.1 ¶¶ 41-43; Orantes Depo. Tr. at 67:3-13; 83:24-25; 84:1-12. Mr. Orantes had instructed Plaintiff to obtain a doctor's note advising what accommodations were required. Naco Depo. Tr. at 71:16-20; Orantes Depo. Tr. at 67:12-13. At Mr. Orantes' request, Plaintiff had provided a medical note directing her to stay away from nitrous oxide and x-ray radiation to Defendants by way of MDA's human resources representative Rosa. Pl.'s 56.1 ¶¶ 48-49.

On October 3, 2019, Plaintiff met with Dr. Cohen and Mr. Orantes. Compl. ¶ 113; Dfts.' 56.1 ¶ 33. Plaintiff recorded the conversation. *See* Dkt. No. 35-5, Plaintiff's Recording Transcript ("Pl. Rec. Tr.").

Plaintiff alleges that Dr. Cohen insulted, yelled at, and belittled her in this meeting. Pl.'s 56.1 ¶ 51. Dr. Cohen told Plaintiff that dealing with her was a "pain in the ass" and accused her of poor performance. Pl. Rec. Tr. at 9:23-25; 10:1-10. Plaintiff was similarly accused of preferring litigation to continuing her employment at MDA and BK&S. *Id.* at 2:15-25; 3:1-10; 5:8-15. When Plaintiff expressed dismay at her treatment by her supervisors, *id.* at 5:17-19, Dr. Cohen mentioned that he was Jewish and pointed out the diversity of his staff to indicate that he is not prejudiced. *Id.* at 5:23-25; 6:1-19; Cohen Depo. Tr. at 114:7-23; 116:8-25.

During the meeting, Dr. Cohen told Plaintiff to return to her doctor and get a letter indicating that there is no medical reason for Plaintiff not to perform routine dental duties including taking x-rays. Pl. Rec. Tr. at 7:5-24. This new letter would be required for Plaintiff to continue her employment. *Id.* at 9:3-4. In return, Dr. Cohen would try to keep Plaintiff away from x-rays and nitrous gas and would transfer her to the general practice department. *Id.* at 7:15-18; 9:18-19. Dr. Cohen indicated that "[t]here would have to be five people sick here for me

5

to ask you to take x-rays." *Id.* at 4:5-6. Dr. Cohen nonetheless noted that that "there's nothing wrong with" Plaintiff taking an x-ray "once in a while." *Id.* at 9:6-8.

Plaintiff asked Dr. Cohen if she could continue working prior to acquiring the new letter as her next doctor's appointment was scheduled for October 16, 2019. *Id.* at 7:25; 8:1-3. Plaintiff also asked Dr. Cohen if she could be transferred to the periodontal treatment department instead of general practice. *Id.* at 9:14-15. Dr. Cohen, believing that Plaintiff was being uncooperative with the process, directed Plaintiff to leave his office. Pl. Rec. Tr. at 10:23-24; Cohen Depo. Tr. at 83:22-25; 84:1-9. Plaintiff understood Dr. Cohen's statement to mean that she was terminated; she subsequently applied for unemployment assistance. Pl. Depo. Tr. at 104:9-19. Neither Dr. Cohen nor Mr. Orantes believes that Plaintiff was, in fact, terminated. Cohen Depo. Tr. at 120:24-25; 121:1-13; Orantes Depo. Tr. at 37:15-25; 38:1-8.

### III. Procedural Background

Plaintiff commenced the instant action on January 29, 2021 after filing a charge with the Equal Employment Opportunity Commission and receiving a right to sue letter. *See* Dkt. No. 1. Her complaint alleges claims of employment discrimination and retaliation against her former employers and supervisors under Title VII, § 1981, the NYSHRL, and the NYCHRL. On January 6, 2023, Defendants filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. *See* Dkt. Nos. 33-35.

### STANDARD

Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the

6

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material "if it might affect the outcome of the suit under the governing law." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020). The relevant inquiry on application for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. In addressing a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Parkinson v. Cozzolino,* 238 F.3d 145, 150 (2d Cir. 2001).

The movants bear the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once that burden has been met, the non-movant may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial. *Matsushita*, 475 U.S. at 585–87. However, reliance upon conclusory statements or mere allegations is not sufficient to defeat a summary judgment motion. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 532–33 (2d Cir. 1993).

## DISCUSSION

### I.    Defendants' Motion for Summary Judgment on Plaintiff's Claims Against MDA and BK&S Is Granted in Part, Denied in Part

Plaintiff asserts claims against her corporate employers, MDA and BK&S, for discrimination on the basis of her pregnancy and race, and for retaliation. For the reasons that follow, summary judgment is granted as to race discrimination but is otherwise denied.

7

## A. Pregnancy Discrimination

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against any individual on the basis of the individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1); *see Vengalattore v. Cornell Univ.*, 36 F.4th 87, 103 (2d Cir. 2022). "The Pregnancy Discrimination Act ["PDA"] makes clear that Title VII's prohibition against sex discrimination applies to discrimination based on pregnancy." *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019) (quoting *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 210 (2015)). The NYSHRL and NYCHRL likewise prohibit discrimination against an employee based on that employee's race, creed, color, sexual orientation, gender identity or expression, sex, or marital status. *See* N.Y. Exec. Law § 296(1); N.Y.C. Admin. Code § 8–107; *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, No. 21-cv-695, 2023 WL 2691622, at *14 (S.D.N.Y. Mar. 29, 2023); *EEOC v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 837 (S.D.N.Y. 2013). Although neither the NYSHRL nor the NYCHRL explicitly names pregnancy as a type of discrimination, courts have routinely held that pregnancy discrimination falls within the laws' prohibitions. *See, e.g.*, *Elaine W. v. Joint Diseases N. Gen. Hosp., Inc.*, 81 N.Y.2d 211, 216 (1993); *Krause v. Lancer & Loader Grp.*, 40 Misc. 3d 385, 392 (N.Y. Sup. Ct. 2013); *Chauca v. Abraham*, 841 F.3d 86, 89 (2d Cir. 2016).

### i. Title VII and the NYSHRL

Pregnancy discrimination claims based on a failure to accommodate under Title VII and the NYSHRL are generally analyzed using a modified version of the three-step burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Malena v. Victoria's Secret Direct*, 886 F. Supp. 2d 349, 357 (S.D.N.Y. 2012); *Farmer v. Shake Shack Enters.*, 473 F. Supp. 3d 309, 323 (S.D.N.Y. 2020). Under this framework, a plaintiff must first

8

establish by a preponderance of the evidence a prima facie case of discrimination by demonstrating "that she belongs to the protected class, that she sought accommodation, that the employer did not accommodate her, and that the employer did accommodate others 'similar in their ability or inability to work.'" *Young*, 575 U.S. at 229.[1] At this stage, the plaintiff's burden is minimal. *Holcomb v. Iona Coll.*, 521 F.3d 130, 139 (2d Cir. 2008) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)). Defendants may then seek to justify their refusal to accommodate the plaintiff by relying on "legitimate, nondiscriminatory" reasons for denying her accommodation. *Young*, 575 U.S. at 229 (quoting *McDonnell Douglas Corp.*, 411 U.S. at 802). Plaintiff may in turn show that Defendants' "proffered reasons are in fact pretextual." *Id.*

Defendants here assert that summary judgment is proper because Plaintiff has failed to establish a prima facie case of pregnancy discrimination or, alternatively, because Plaintiff cannot rebut Defendants' legitimate, nondiscriminatory reason for denying Plaintiff's requests.

### a. *Plaintiff's Prima Facie Case*

Plaintiff has plainly established a prima facie case of pregnancy discrimination based on her employers' failure to accommodate.

Plaintiff, by virtue of her pregnancy alone, falls within the protected class. *See Farmer*, 473 F. Supp. 3d at 324; *Xiang v. Eagle Enters.*, No. 19-cv-1752, 2022 WL 785055, at *13

---

[1] Plaintiff accurately states that the *McDonnell Douglas* framework "does not apply where, for example, a plaintiff is able to produce direct evidence of discrimination." *Gaither v. Stop & Shop Supermarket Co.*, 84 F. Supp. 3d 113, 116 (D. Conn. 2015) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)). Direct evidence is "[e]vidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." *Black's Law Dictionary* (11th ed. 2019). Plaintiff contends that she has produced direct evidence of pregnancy discrimination: Defendants say that they would provide accommodations for staff unable to perform certain tasks and they plainly refused to do so for Plaintiff. *See* Pl.'s 56.1 ¶ 88; Cohen Depo. Tr. at 101:10-13. This does not suffice to prove pregnancy discrimination absent inference or presumption. At the summary judgment stage, nevertheless, the operative analysis is whether there are factual disputes sufficient to require submission to a jury. It does not matter whether the facts are styled direct or indirect evidence of discrimination; if there are genuine disputes as to material fact, the Court must deny the summary judgment.

9

(S.D.N.Y. Mar. 15, 2022); *see also Elaine W.*, 81 N.Y.2d at 216 (noting that "distinctions based solely upon a woman's pregnant condition constitute sexual discrimination" under the NYSHRL). Defendants contend that the PDA does not entitle Plaintiff to workplace accommodations by virtue of her pregnancy alone—that she must show some pregnancy-related condition or disability to belong to the protected class. *See* Dkt. No. 34, Defendants' Memorandum ("Dfts.' Memo.") 8.[2] This conclusion is wholly at odds with the Supreme Court's holding in *Young* and is based on a misreading of that case. In *Young*, the Court found that a plaintiff may reach a jury by providing evidence that her employer's policies impose a significant burden on pregnant workers, and that the employer's proffered nondiscriminatory reasons are not sufficiently strong to justify that burden, giving rise to an inference of intentional discrimination. *Young*, 575 U.S. at 229. Far be it from granting pregnant employees a "most-favored-nation status," *id.* at 222, the Court held that the PDA requires employers to treat pregnant employees similar to others both in their ability or inability to work and in all other relevant considerations. *Id.* at 229.

Plaintiff has also established that she requested accommodations from her supervisors to ensure she could continue working while pregnant. She presents evidence that she advised her supervisors of her pregnancy, asked to be excused from duties involving x-rays and the administering of nitrous oxide, and offered a doctor's note in support of her request. *See, e.g.*, Pl.

---

[2] Alongside *Young*, Defendants cite three cases in support of their argument: *Colas v. City Univ. of N.Y.*, No. 17-cv-4825, 2019 WL 2028701 (E.D.N.Y. May 7, 2019); *Martinez v. N.Y. State Div. of Hum. Rts.*, No. 13-cv-1252, 2015 WL 437399 (S.D.N.Y. Feb. 2, 2015); and *Colon v. Sabic Innovative Plastics US, Inc.*, No. 15-cv-651, 2017 WL 3503681 (N.D.N.Y. Aug. 15, 2017). *See* Dfts.' Memo. 7. Although the cited language from these cases demonstrates that pregnancy alone is not considered a disability, that has no bearing on the instant matter. Plaintiff here brings no claims under the American with Disabilities Act or Section 504 of the Rehabilitation Act of 1973.

10

Depo. Tr. at 22:24-25; 23:2-4; 30:11-17; 30:23-25; 31:2-8; 40:11-15; Orantes Depo. Tr. at 67:3-
13; 83:24-25; 84:1-12.

Next, Plaintiff presents evidence indicating that her employers offered no real
accommodation for her pregnancy. Plaintiff notes, for example, that she was instructed to obtain
a doctor's note allowing her to take x-rays and be present during the administration of nitrous
oxide—after she presented a doctor's note in support of her request for accommodations. Pl.
Depo. Tr. at 107:6-15; 108:7-10. Further, Plaintiff contends that Defendants' offer to transfer
Plaintiff to the general practice department (a purported accommodation) would not have led to a
change in her substantive duties. Plaintiff alleges that she would still have been required to take
x-rays and be in the room during the administration of nitrous oxide even in the general practice
department. Pl. Depo. Tr. at 101:18-22; 102:18-23. Although Defendants contend that Plaintiff
was accommodated, *see* Dfts.' Memo. 10–11, "[a]ssessments of credibility and choices between
conflicting versions of the events are matters for the jury, not for the court on summary
judgment." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996).

Plaintiff finally presents evidence demonstrating that her employers accommodated (or
would have accommodated) others similarly situated in their ability or inability to work. For
example, Dr. Cohen said that "if an employee said . . . 'I can't take an x-ray,' and they're
sensitive to it, I would not ask them to take x-rays." Cohen Depo. Tr. at 101:10-13; *see also id.* at
113:8-18; 113:19-25; 114:1-2; Naco Depo. Tr. at 66:5-18; 66:19-22; Orantes Depo. Tr. at
138:11-17.

For purposes of the instant motion, Plaintiff has met the minimal burden required to
establish a prima facie case of pregnancy discrimination based on her employers' failure to
accommodate. Moreover, to the degree that Defendants legitimately contest Plaintiff's

11

presentation of the facts, there plainly exists a genuine dispute of material fact that warrants denying Defendants' motion for summary judgment.

### b. *Legitimate, Nondiscriminatory Reason*

In addition to arguing that they accommodated Plaintiff's pregnancy, Defendants attempt to counter the allegations of impropriety by proffering a legitimate, nondiscriminatory reason for denying Plaintiff's requests.

At the second stage of the *McDonnell Douglas* analysis, the burden on the defendants "is one of production, not persuasion; it 'can involve no credibility assessment,'" *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000) (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 524).

Any denial of accommodations and resulting adverse employment actions, the employers contend, are the direct result of Plaintiff's inability to perform the essential tasks of a dental assistant—including taking x-rays and assisting with the administration of nitrous oxide. Dfts.' Memo. 11, 13. Put otherwise, Defendants argue that the ability to perform these tasks is a bona fide occupational qualification ("BFOQ"). Stating this rationale satisfies Defendants' burden.

### c. *Pretext*

Plaintiff is then tasked with demonstrating that Defendants' reasoning is merely pretextual. She may do so by showing that her "employer's given legitimate reason is unworthy of credence, by reliance on the evidence comprising the prima facie case, without more, or by demonstrating that similarly situated employees outside the protected class were treated differently." *Primmer v. CBS Studios, Inc.*, 667 F. Supp. 2d 248, 260–61 (S.D.N.Y. 2009) (citations omitted). Plaintiff's burden here is higher than at the prima facie stage as the fact

12

finder must be persuaded to "disbelieve the employer" and "believe the plaintiff's explanation of intentional discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 519).

Here, the same evidence that raised factual issues with respect to Plaintiff's prima facie case can and does raise genuine issues as to whether her employers' proffered reasons for denying Plaintiff's accommodations were pretextual. Setting aside the major disputes over whether Plaintiff was, in fact, accommodated or suffered adverse employment actions, Plaintiff nonetheless argues the following: a dearth of evidence that Plaintiff was a poor performer despite Dr. Cohen's insistence to the contrary, conflicting accounts of Plaintiff's desire to engage in constructive dialogue with her supervisors regarding her employment, and the temporal proximity between Plaintiff's pregnancy and the cessation of her employment.[3] "No one piece of evidence need be sufficient, standing alone, to permit a rational finder of fact to infer that defendant's employment decision was more likely than not motivated in part by discrimination." *Walsh v. New York City Hous. Auth.*, 828 F.3d 70, 76 (2d Cir. 2016). However, taken in concert, Plaintiff's arguments meet her burden of demonstrating that Defendants' reasoning is merely pretextual.

The Court does not here present an exhaustive list of Plaintiff's arguments. What is presented, however, shows that before the Court is a classic "he-said/she-said scenario, which involves an assessment of credibility and the resolution of competing inferences from the disputed facts." *Primmer*, 667 F. Supp. 2d at 261. Neither is for the Court to decide—that role is

---

[3] Absent other evidence, the temporal proximity between Plaintiff's pregnancy and the cessation of her employment is insufficient to establish pretext. *See El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010).

reserved for a jury. Accordingly, summary judgment on Plaintiff's pregnancy discrimination claims must be denied.

ii. *NYCHRL*

Although the NYCHRL follows the same general framework as Title VII and the NYSHRL, *see Farmer*, 473 F. Supp. 3d at 327, courts are instructed to analyze NYCHRL claims "separately and independently from any federal and state law claims." *Mihalik v. Credit Agricole Cheuvreux N. Am.*, 715 F.3d 102, 109 (2d Cir. 2013). The NYCHRL's provisions, however, are to be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Albunio v. City of New York*, 16 N.Y.3d 472, 477–78 (2011); *see also Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009). As Plaintiff's pregnancy discrimination claims against her employers survive analysis under Title VII and the NYSHRL, they necessarily survive the more liberal standard of the NYCHRL.

B. Race Discrimination

As previously mentioned, Title VII, the NYSHRL, and the NYCHRL prohibit employers from discriminating against any individual on the basis of that individual's race or color. § 1981 does likewise, providing that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a); *see also Village of Freeport v. Barrella*, 814 F.3d 594, 604–05 (2d Cir. 2016). A plaintiff may pursue a claim under § 1981 against her employer for intentional discrimination. *Raymond v. City of New York*, 317 F. Supp. 3d 746, 760 (S.D.N.Y. 2018).

14

*i.    Title VII, § 1981, and the NYSHRL*

Race discrimination claims under Title VII, §1981, and the NYSHRL are also all analyzed under the *McDonnell Douglas* burden-shifting framework. *See, e.g.*, *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015); *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014); *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010); *Raymond*, 317 F. Supp. 3d at 760.

To establish a prima facie case of race discrimination, a plaintiff must prove that she belongs to a protected class, was qualified for the position she held, suffered an adverse employment action, and that the adverse action occurred in circumstances giving rise to an inference of race discrimination. *Kirkland*, 760 F.3d at 225. Once a prima facie case has been made, employers are then charged with presenting a legitimate, non-discriminatory reason for their actions. *Id.* The plaintiff may then show that the employers' explanation is a pretext for intentional discrimination.

Unlike with pregnancy discrimination, Plaintiff has not made out a prima facie case of race discrimination.

As an African-American woman, Plaintiff plainly falls within a protected class. *See Gueye v. Evans*, No. 4-cv-6029, 2006 WL 3298427, at *4 (S.D.N.Y. Nov. 13, 2006). Plaintiff was qualified for the position she held as a dental assistant. *See* Dfts.' 56.1 ¶¶ 2-3. Although there is some evidence in the record suggesting that Plaintiff was not necessarily a model employee, there is no such evidence indicating that Plaintiff was not qualified to be a dental

assistant.[4] And Plaintiff alleges that she suffered some adverse employment actions, including suspension and, ultimately, termination.

What is conspicuous by its absence is any evidence tending to show that Plaintiff suffered any adverse employment action because of her race, as opposed to her pregnancy. The only evidence cited by Plaintiff are two remarks made by Dr. Cohen during their October 3, 2019 meeting. According to Plaintiff, Dr. Cohen said of his staff, "Every person here is either ethnically black . . . Spanish, Russian. I'm the minority here. I'm Jewish." Pl. Rec. Tr. at 5:23-24; 6:1-2. And he continued, "If I heard someone use the N-word in public or to each other in a room, I would make plans in my head to throw them the fuck out of here . . . because I don't go for people like that." *Id.* at 6:13-19. Plaintiff—admitting that her race had not been an issue in her employment until that day—argues that these comments give rise to an inference of discriminatory motive. The comments are, in Plaintiff's estimation, no mere stray remarks—which, "without more, cannot get a discrimination suit to a jury." *Danzer v. Norden Sys.*, 151 F.3d 50, 56 (2d Cir. 1998). Defendants counter, pointing to Dr. Cohen's statement that he referenced Plaintiff's race to "make it crystal clear that [discrimination] is not something that was going on in Metropolitan Dental." Cohen Depo. Tr. at 116:15-17.

To assess the probative value of Dr. Cohen's remarks as evidence of race discrimination, the Court considers four factors: who made the remark, when the remark was made in relation to the employment decisions at issue, the remark's content, and the remark's context. *See Lenzi*, 944 F.3d at 112 (quoting *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010)). Although no single factor is dispositive, *Henry*, 616 F.3d at 150, the factors taken in their totality

---

[4] For reasons discussed previously, the Court here sets asides allegations that Plaintiff's pregnancy prevented her from satisfactorily performing her duties.

fail to give rise to any inference that she was subjected to race (as opposed to pregnancy) discrimination. Plaintiff's employer made the remarks and the remarks were made during the meeting when, per her telling of the story, she was fired.

However, the remarks express an intolerance for racial and ethnic discrimination, especially for discrimination against African-Americans; they cannot reasonably be interpreted in any other way. Plaintiff herself admits that, prior to that moment, she had never experienced anything that felt to her like race discrimination (as opposed to pregnancy discrimination) and had not raised any concerns about race. Pl. Depo. Tr. at 105:9-12. Cohen's remark was literally the first reference to her race she had ever heard while working at MDA and BK&S. Of course, Plaintiff was not accusing Dr. Cohen of race discrimination during their meeting. *Id.* at 105:19-25. But it is not surprising that someone who had been accused of discrimination[5] might respond by saying, "How dare you say I am prejudiced; look at my work force? I would never tolerate anyone speaking in a racist manner." That Plaintiff found the interjection of race into a conversation that arose out of her pregnancy offensive is understandable, but she has literally no evidence to support a claim that she was either treated differently during her employment or fired at the October 3 meeting because of her race—while she has a great deal of evidence to support her claim that she was both treated differently and fired because she got pregnant. Plaintiff's race discrimination claim is grounded in the sort of *post hoc ergo propter hoc* reasoning ("I am African-American; I was fired; therefore, I must have been fired because I was African-American") that has quite properly been found not to create, without more, any inference of race discrimination. *See, e.g.*, *Hawana v. City of New York*, 230 F. Supp. 2d 518, 528 (S.D.N.Y.

---

[5] Prior to the meeting, Plaintiff had complained about the failure to accommodate her pregnancy and her treatment by Dr. Naco; there is no evidence that she ever complained about race discrimination.

2002); *Pasha v. William M. Mercer Consulting, Inc.*, No. 00-cv-8262, 2004 WL 188077, at *4
(S.D.N.Y. Feb. 2, 2004); *Paupaw-Myrie v. Mount Vernon City Sch. Dist.*, No. 21-cv-11237,
2023 WL 1109702, at *9 (S.D.N.Y. Jan. 30, 2023); *Bickerstaff v. Vassar Coll.*, 196 F.3d 435,
456 (2d Cir. 1999)

Accordingly, Plaintiff's federal race discrimination claim is dismissed. Because the
record lacks any evidence tending to support a race discrimination claim, no such claim lies
under State or even City law. Those claims, too, are dismissed.

C. Retaliation

Title VII and the NYSHRL prohibit employers from retaliating against their employees
for engaging in protected activities. *See, e.g.*, *Littlejohn*, 795 F.3d at 315–16; *Lore v. City of
Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012); *Farmer*, 473 F. Supp. 3d at 330; *Cadet v. Alliance
Nursing Staffing of N.Y., Inc.*, 632 F. Supp. 3d 202, 235–36 (S.D.N.Y. 2022). The NYCHRL
likewise prohibits retaliation but adopts a broader standard for defining what qualifies as a
retaliatory act, or an adverse employment action. *See Smith v. City of New York*, 385 F. Supp. 3d
323, 345–46 (S.D.N.Y. 2019). These anti-retaliation provisions are all analyzed under the now
all-too-familiar three-step burden-shifting framework.[6]

Plaintiff contends that she was retaliated against for engaging in protected activities,
namely, requesting reasonable accommodations for pregnancy, complaining to her superiors
about what she perceived to be discriminatory or otherwise unfair treatment, and contacting a
lawyer. *See* Dkt. No. 38, Plaintiff's Memorandum ("Pl.'s Memo.") 19-20. These activities are

---

[6] § 1981 similarly prohibits retaliation. *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 445 (2008). Any retaliation
claims brought under § 1981 are dismissed, however, as the Court has already dismissed the underlying claims of
race discrimination.

certainly protected. *See, e.g.*, *Littlejohn*, 795 F.3d at 317; *Tang v. Glocap Search LLC*, No. 14-cv-1108, 2015 WL 5472929, at *2 (S.D.N.Y. Sept. 16, 2015); *Jenkins v. N.Y.C. Transit Auth.*, 646 F. Supp. 2d 464, 473 (S.D.N.Y. 2009). Plaintiff similarly argues that she suffered several adverse employment actions as a result of her engaging in protected activities.

"[A]n adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d. Cir. 2015) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). This definition "is not limited to discriminatory actions that affect the terms and conditions of employment." *Id.*; *see also Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003). Plaintiff references several possible instances of adverse employment actions, including: a lateral transfer to a different department, a failure by employers to investigate her allegations of discrimination, her temporary suspension by Dr. Naco, and her termination by Dr. Cohen.

Defendants allege that summary judgment is warranted on Plaintiff's retaliation claims as Plaintiff cannot establish that she engaged in any protected activities, suffered any adverse employment actions, or that if adverse employment actions were suffered, that there was any causal link to protected activities. Dfts.' Memo. 14. For example, Plaintiff's complaints about her treatment by Dr. Naco do not qualify as protected activities as they were "too general, vague and non-specific." *Id.* at 15.[7] Defendants further argue that, even if Plaintiff could establish these requirements, that she could not rebut Defendants' articulated legitimate business reasons for its actions. *Id.*

---

[7] Defendants here rely on "an implicit requirement" of Title VII retaliation liability—that an employer was aware, or could reasonably have understood, that Plaintiff engaged in a protected activity. *See Grant v. United Cerebral Palsy of N.Y.C., Inc.*, No. 11-cv-18, 2014 WL 902638, at *11 (S.D.N.Y. Mar. 7, 2014). Defendants could not retaliate against Plaintiff, so the argument goes, if they were not aware she was engaged in a protected activity.

The Court finds Defendants' arguments wholly unpersuasive. Plaintiff presents more than enough evidence that she engaged in multiple protected activities, including complaining to Mario Orantes several times over the phone regarding Dr. Naco's conduct, *see* Pl.'s 56.1 ¶¶ 36-39. She also presented evidence of adverse employment actions. Defendants' contention that Plaintiff's complaints were too general or vague to qualify as protected activities is a bare assertion bereft of evidentiary support.

Moreover, in their briefing, Defendants gloss over what is perhaps the central factual dispute at the heart of Plaintiff's retaliation claims: whether Plaintiff was actually fired.[8] Defendants alternately state that "Plaintiff suffered no adverse action – Defendant Cohen never told her she was fired," and "Plaintiff . . . is unable to rebut the legitimate reason Defendants had for her termination." Dfts.' Memo. 15, 13. These contrasting statements by the Defendant evidence the existence of a genuine issue of material fact. To the degree Defendants argue otherwise, they have only persuaded the Court that this case must be tried to a jury.

## II. Defendants' Motion for Summary Judgment on Plaintiff's Claims Against the Individual Defendants Is Granted in Part, Denied in Part

Plaintiff asserts claims against Dr. Paul Cohen, Dr. Kathy Naco, and Mario Orantes ("Individual Defendants") for their roles in discriminating and retaliating against Plaintiff or otherwise aiding and abetting the discrimination and retaliation discussed above. For the reasons that follow, summary judgment on these claims is granted as to § 1981 liability, but is otherwise denied.

---

[8] Of course, Plaintiff does not only allege that she was fired; she identifies other adverse employment actions, including a failure to by her employers to accommodate, a failure to respond to Plaintiff's complaints, and a suspension.

A. Dr. Paul Cohen

    *i.* § 1981

Although "individuals are not subject to liability under Title VII," they may be held liable under § 1981 when "personally involved in" alleged discriminatory acts. *See Patterson v. County of Oneida*, 375 F.3d 206, 221, 226 (2d Cir. 2004); *see also Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000). Plaintiff has presented sufficient evidence that Dr. Cohen engaged in the discriminatory and retaliatory acts that underlie her pregnancy and retaliation claims discussed above. However, as noted previously, § 1981 pertains solely to claims of race discrimination. As the race discrimination claim has been dismissed, summary judgment is warranted on Plaintiff's claim against Dr. Cohen under § 1981.

    *ii.* NYSHRL

There are two avenues to establishing individual liability for employment discrimination and retaliation under the NYSHRL. First, an individual may be held directly liable when he possesses "ownership interest" or is a "supervisor with the authority to hire and fire employees." *Malena*, 886 F. Supp. 2d at 365–66; *see* N.Y. Exec. Law § 296(1). Second, an individual may be held liable where he is found to "aid, abet, incite, compel or coerce" the illicit discriminatory or retaliatory acts. *See Xiang*, 2022 WL 785055, at *14–15; N.Y. Exec. Law § 296(6).

Plaintiff asserts claims against Dr. Cohen under both theories of liability. Although Defendants counter that an individual cannot be liable for aiding-and-abetting his own discrimination, there is no factual dispute that Dr. Cohen possesses an ownership interest in MDA and BK&S. Whether Dr. Cohen may have separately aided or abetted discrimination or retaliation is therefore immaterial to assessing his potential liability. Consistent with the above

reasons, summary judgment is denied as to Plaintiff's claims for pregnancy discrimination and retaliation against Dr. Cohen under the NYSHRL. However, as all of Plaintiff's claims relating to race discrimination have been dismissed, any race-related claims against Dr. Cohen under the NYSHRL are necessarily dismissed as well.

        *iii.*    *NYCHRL*

The NYCHRL also provides for individual liability. *See Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004); N.Y.C. Admin. Code § 8–107(1)(a). Individuals are liable for employment discrimination and retaliation under the NYCHRL "regardless of ownership or decisionmaking power." *Banks v. Corr. Servs. Corp.*, 475 F. Supp. 2d 189, 200 (E.D.N.Y. 2007). For the reasons discussed above, summary judgment is denied as to Plaintiff's claims for pregnancy discrimination and for retaliation for opposing pregnancy discrimination as against Dr. Cohen under the NYCHRL. Again, to the extent the NYCHRL claims relate to race discrimination they are dismissed.

      B.   <u>Mario Orantes</u>

        *i.*    *§ 1981*

For reasons discussed above in relation to Dr. Cohen's § 1981 liability, Plaintiff's claims under § 1981 against Mario Orantes are dismissed.

        *ii.*    *NYSHRL*

Plaintiff has presented sufficient evidence that Mario Orantes engaged in the discriminatory and retaliatory acts that underlie her pregnancy discrimination and retaliation claims. She has shown, for example, that Mario Orantes failed to accommodate her pregnancy or respond appropriately to her complaints about Dr. Naco. Plaintiff has also presented sufficient

22

evidence that Mario Orantes was her "supervisor with the authority to hire and fire." *Malena*, 886 F. Supp. 2d at 365–66. Defendants do not dispute this characterization. Therefore, summary judgment is inappropriate for Plaintiff's pregnancy-related claims against Mario Orantes under the NYSHRL.

      *iii.*   *NYCHRL*

Consistent with the above, summary judgment is denied as to Plaintiff's pregnancy-related claims against Mario Orantes under the NYCHRL.

   C.  <u>Dr. Kathy Naco</u>

      *i.*   *§ 1981*

For reasons discussed above in relation to Dr. Cohen's § 1981 liability, Plaintiff's claims under § 1981 against Dr. Naco are dismissed.

      *ii.*   *NYSHRL*

Plaintiff has presented sufficient evidence that Dr. Naco engaged in the discriminatory and retaliatory acts that underlie her pregnancy discrimination and retaliation claims. For example, Dr. Naco allegedly denied Plaintiff's requests for accommodations and suspended Plaintiff from work.

Defendants contend that summary judgment is proper for Plaintiff's claims against Dr. Naco under the NYSHRL as Dr. Naco did not possess supervisory control over Plaintiff. In her deposition, Dr. Naco indicates as much, noting: "I don't have supervising authority over any dental assistants;" "I have no control, no say [over scheduling];" and "I don't have the power to tell her to go home. I cannot. I don't have the authority to switch any assistants, to hire assistants,

to fire assistants. It's not my call. They know I'm not the boss." Naco Depo. Tr. at 23:21-22; 25:21-24; 111:2-15.

Defendants argument here rests on a disputed issue of material fact, as Mario Orantes understood Dr. Naco to have some management authority over Plaintiff. *See* Orantes Depo. Tr. at 12:10-19. More important, Dr. Naco need not possess any supervisory control over Plaintiff to be found liable for aiding-and-abetting discrimination or retaliation. As Plaintiff presents sufficient evidence to indicate that Dr. Naco conducted or otherwise aided-and-abetted her colleagues discriminatory and retaliatory acts relating to her pregnancy, summary judgment must be denied as to Plaintiff's claims against Dr. Naco under the NYSHRL.

        *iii.   NYCHRL*

Consistent with the above, summary judgment is denied as to Plaintiff's pregnancy-related claims against Dr. Naco under the NYCHRL.

## CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is granted as to Plaintiff's race discrimination claims but is denied as to her claims for pregnancy discrimination and retaliation in connection therewith.

The Clerk of Court is respectfully directed to terminate the motion at Dkt. No. 33 from the Court's list of pending motions. This constitutes the decision and order of the Court. It is a written opinion.

Dated: August 10, 2023

BY ECF TO ALL COUNSEL

                                   U.S.D.J.